## Nancy A. Muller Milligan v. William M. Milligan

[613 A.2d 1281]

No. 89-589

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 15, 1992

*William M. McCarty* and *Benjamin S. McCarty* of *McCarty Law Offices*, Brattleboro, for Plaintiff-Appellee.

*Bruce M. Lawlor* of *Lawlor & Polidor, P.C.*, Springfield, for Defendant-Appellant.

**Dooley, J.** Defendant, William Milligan, appeals the judgment in this divorce case, arguing that the superior court (1) had no authority to order him to terminate his qualified tax-

shelter annuity; (2) improperly ordered that some of the annuity's proceeds be placed in a trust fund to defray educational costs of his adult children; and (3) improperly awarded attorney's fees to plaintiff, Nancy Milligan. We affirm the order to terminate the annuity and the attorney's fees award; we reverse the order to create the educational trust and remand.

In December 1989, the court issued a decree of divorce on the grounds that the parties had lived apart for more than six months. The parties, married in 1966, have three daughters, who were twenty-one, twenty, and fifteen years of age at the time of the decree. Defendant was a hospital administrator and earned approximately $90,000 annually in salary and benefits at the time of the order. Plaintiff was a graduate student in anthropology and earned an annual stipend of approximately $4,500, while expecting to earn approximately $30,000 annually after receiving her doctorate in 1993. The parties' most substantial assets were the marital home, found by the court to be worth $150,000 with a mortgage of $28,000, and three § 403(b) qualified tax-shelter annuities held by defendant. See 26 U.S.C.A. § 403(b). The annuity accounts, consisting of regular contributions made by defendant and his employer in lieu of salary, were worth approximately $190,000.

The trial court awarded the marital home, subject to mortgage and taxes, to plaintiff. The court determined that the annuities were marital property and awarded two of the accounts to defendant. It ordered that defendant liquidate the third annuity, with an approximate value of $70,000, and pay any taxes or penalties resulting from the early withdrawal of the funds. The proceeds of the account were to be distributed in three ways: first, to reimburse the parties for expenses incurred by each during the breakup of the marriage; second, to discharge certain financial obligations of the parties; and third, to the extent any funds remained, to establish a trust, the income and corpus of which would be used to help pay educational expenses for the three children "until each obtains a baccalaureate degree or discontinues pursuit of a college degree, or until the fund is exhausted." The order placed approximately $13,000 in the educational trust. Any money remaining in the trust after its termination was to be divided equally between the parties. The court awarded plaintiff $13,000 in attorney's fees, the

amount it found she had incurred, and ordered defendant to pay $8,000 of those fees to plaintiff's counsel by February 1, 1990.

Defendant argues first that the court did not have the authority to order him to terminate the pension fund annuity. In support of this position, he first asserts that the pension is not marital property and cannot be distributed. He claims that the court reached the extent of its power in considering the existence of the pensions as a factor in distributing other property pursuant to 15 V.S.A. § 751(b).

We have affirmed trial court orders that used the approach defendant seeks in *Victor v. Victor*, 142 Vt. 126, 129, 453 A.2d 1115, 1116 (1982), and *Myott v. Myott*, 149 Vt. 573, 579, 547 A.2d 1336, 1340 (1988). More recently, however, we have held that pension rights acquired by a party to a divorce during the course of the marriage constitute marital property and are subject to equitable distribution along with other assets. *McDermott v. McDermott*, 150 Vt. 258, 259, 552 A.2d 786, 788 (1988). This is because the money in the account was either deposited at the party's option, or by the employer " 'in lieu of higher compensation which would otherwise have enhanced . . . the marital standard of living.' " *Id.* at 259–60, 552 A.2d at 788 (quoting *Majauskas v. Majauskas*, 61 N.Y.2d 481, 491–92, 463 N.E.2d 15, 20–21, 474 N.Y.S.2d 699, 705 (1984)). There is no general barrier to distribution of the pensions as marital assets.

Defendant's overall complaint, however, is that the court exceeded its powers in ordering termination of the pension because a § 403(b) pension is restricted, and termination, if possible, will result in substantial tax liability and penalties. We have repeatedly held that the "disposition of property pursuant to a divorce decree is a matter of wide discretion for the trial court." *Lalumiere v. Lalumiere*, 149 Vt. 469, 471, 544 A.2d 1170, 1172 (1988). We will not disturb that disposition unless the court's " 'discretion was abused, withheld or exercised on untenable grounds or to a clearly unreasonable extent' " *Id.* (quoting *Roberts v. Roberts*, 146 Vt. 498, 499, 505 A.2d 676, 677 (1986)). Applying the court's findings and the evidence in the record to the statutory factors in 15 V.S.A. § 751(b), we find no abuse here.

In *McDermott*, we acknowledged that distribution of pension funds is "particularly problematic" and that courts normally

use either an "offset" method or a "deferred distribution or reserved jurisdiction method." 150 Vt. at 260, 552 A.2d at 788. The term "offset" refers to the practice of immediately distributing marital assets by awarding the pension to the employee and other property to compensate the employee's spouse. Essentially, defendant's position is that the court was required to use an offset distribution in this case. *McDermott* does not, however, require in all cases the use of an offset method, which is only one way of immediately distributing the value of the pension along with other marital assets.

The trial court, having already assigned the house to plaintiff, deemed it equitable to give her more. It concluded that liquidation of the account was necessary to provide plaintiff her share of its value immediately, and to pay debts and obligations of the parties, stating that there were "immediate financial needs and no other resource to meet that need." Thus, the offset method was inadequate to achieve an equitable distribution of marital assets.

■ The trial court has power to distribute marital assets, including bank accounts and securities, "in whatever manner it finds just and equitable, regardless of the prior owner." *Condosta v. Condosta*, 142 Vt. 117, 123, 453 A.2d 1128, 1131 (1982). Although we have not directly addressed the court's power to order the sale of a marital asset, we have affirmed such awards. See, e.g., *Roberts v. Roberts*, 146 Vt. at 499, 505 A.2d at 677. We conclude that it is within the court's discretion to order that marital property held by one or both parties be liquidated and immediately reduced to cash when the court finds it necessary, as here, to meet immediate needs. See *Carr v. Carr*, 108 Idaho 684, 688, 701 P.2d 304, 308 (1985) (court properly ordered sale of truck stop, parties' jointly held business asset, "to give each spouse the immediate control of his or her share of the property"); *Breda v. Breda*, 788 S.W.2d 769, 771–72 (Mo. Ct. App. 1990) (court properly ordered sale of marital residence when property could not be divided in kind, the sale was in the best interests of one of the parties, and wife had failed to show that there were sufficient assets other than the residence which could compensate husband for award of property outright to wife).

In affirming the court's power to order termination of the pension, we reject defendant's claim that the restrictions on

termination made the order inappropriate. Defendant failed to respond to discovery orders to produce the documents that showed the terms governing the pension, and his testimony about his power to terminate the pension and the consequences of terminating the pension was inconclusive. At times, defendant testified that he was prohibited from gaining immediate access to the pension funds; he also testified that he could gain access, but only by paying a large tax penalty. In the absence of clear evidence from defendant, the court turned to the applicable provision of the Internal Revenue Code, 26 U.S.C. § 403(b)(11), and noted that it allows withdrawal of pension funds "in the case of hardship." The court concluded that a hardship existed and the funds would be available.

Given the evidence and arguments made before the trial court, we cannot conclude that its determination was an abuse of its wide discretion. See *Prescott v. Smits*, 146 Vt. 430, 433–34, 505 A.2d 1211, 1213 (1985) (contention raised but not fairly presented in trial court not preserved for appeal); *In re Marriage of Grubb*, 721 P.2d 1194, 1196 (Colo. Ct. App. 1986) (consideration of tax consequences is at trial court's discretion; court properly ignored tax consequences where evidence of them was speculative); *Noll v. Noll*, 55 Ohio App. 3d 160, 163–64, 563 N.E.2d 44, 48 (1989) (court's refusal to reduce value of pension by future tax consequences was not error since the court has wide discretion and must divide the property equitably, not necessarily equally). If, after the judgment, defendant found it impossible to carry out the trial court's specific order because the funds in the pension account were, indeed, inaccessible to him, his recourse was to file a motion in the trial court for relief from the judgment, as permitted by V.R.C.P. 60(b). See, e.g., *Cameron v. Cameron*, 150 Vt. 647, 648, 549 A.2d 1043, 1043–44 (1988); *Blanchard v. Blanchard*, 149 Vt. 534, 536–37, 546 A.2d 1370, 1372 (1988).

Defendant next argues that the court improperly ordered that part of the proceeds of the liquidated annuity account be placed in trust for the purpose of assisting the parties' daughters with the payment of educational costs. The court based this aspect of its order on its conclusion that the parties "have *contractually* agreed to provide for college education of their three children." The conclusion is supported by a finding of fact that

the parties made "an agreement early in their marriage that their children also should be given every opportunity to obtain a college education, and they . . . [would] provide this chance." The court found its authority to order a post-majority education allotment in 15 V.S.A. § 659(b), which provides that "[i]f the parties agree, the court may include in the child support order an additional amount designated for the purpose of providing for postsecondary education." Apparently, the court concluded that the obligation it recognized under § 659(b) could support a property distribution award pursuant to § 751.

■ We concur with defendant that the parties' agreement to send the children to college, to the extent it existed, was not of the type governed by § 659(b). The "agreement" found by the court occurred early in the marriage when the children were young and long before divorce was contemplated. The agreement specified in the statute is one to place the post-majority support provision in the court order. Such a statutory authorization is necessary because the barrier to a post-majority support order is commonly held to be jurisdictional. See, e.g., *Spingola v. Spingola*, 93 N.M. 598, 600, 603 P.2d 708, 710 (1979). This construction is consistent with our holdings that contracts between spouses for payment of money made prior to a marriage or during a marriage are not ordinarily enforceable in a divorce action unless they "contemplate a divorce." See *Carter v. Carter*, 76 Vt. 190, 191, 56 A. 989, 990 (1904). It is also consistent with the law of other states that recognize stipulations for post-majority support filed as part of the divorce action. See Horan, *Postminority Support for College Education—A Legally Enforceable Obligation in Divorce Proceedings?*, 20 Fam. L. Q. 589, 593 (1987) (courts "will not compel postminority support unless the parties voluntarily agreed to undertake the responsibility to pay such support"); *H.P.A. v. S.C.A.*, 704 P.2d 205, 210 (Alaska 1985) (voluntary establishment of college fund is not an agreement to assume a share of the costs of college education). Since the "agreement" found by the trial court is not of the type recognized by § 659(b), we cannot accept the rationale used by the court to support the educational trust order.

We must consider, then, whether the court had the power to order the trust in the absence of the parties' agreement. The

order involved is one that distributes marital property pursuant to 15 V.S.A. § 751, and not one that establishes an obligation to support the parties' children during their college years. Although we have held that property must normally be distributed between the parties, *Senesac v. Senesac*, 135 Vt. 24, 25, 370 A.2d 214, 215 (1976), it is appropriate to use a property award to discharge an obligation to provide support. Thus, educational trusts have been endorsed by most courts in jurisdictions where there is an underlying obligation of the parent to provide support during the educational years. See, e.g., *Davis v. Davis*, 268 N.W.2d 769, 778 (N.D. 1978). In this case, there is such an obligation with respect to Laura Milligan until she reaches eighteen years of age.

■■ We have held, however, that a property order cannot be used to create an obligation to support children beyond their minority. *Quesnel v. Quesnel*, 150 Vt. 149, 151, 549 A.2d 644, 646 (1988). The court has no power to order creation of an educational trust for use beyond the age of majority of the children. To the extent that the order of the court did so for the older daughters, and for the younger daughter once she turned eighteen, it cannot be sustained on this record.

Although we must reverse the property distribution of the pension funds to establish the educational trust, we emphasize that the error lies in the specification of the use of the funds. The court is free to distribute property to plaintiff even though she may indicate an intent to use it to provide for the post-secondary education of children of the parties. See *id.*

The reversal of the order establishing the educational trust may affect the distribution of the property generally. We therefore vacate the property distribution to give the court discretion to fashion a new order.

■ Finally, defendant claims that the court improperly awarded plaintiff $13,000 in attorney's fees, arguing that it failed to make findings on the financial circumstances of the parties and made other erroneous findings. He further argues that the court considered fees incurred for matters other than this divorce action, and that there was no evidence to support

the reasonableness of the fees. These contentions are without merit.

■ The trial court may award attorney's fees in a divorce action at its discretion. *Cleverly v. Cleverly*, 151 Vt. 351, 358, 561 A.2d 99, 103 (1989). The basic procedural requirements for an award were set out in *Ely v. Ely*, 139 Vt. 238, 242, 427 A.2d 361, 364 (1981), and bear repeating here because they resolve much of defendant's claim:

> the peculiar nature of divorce and similar actions, involving almost always the financial circumstances and abilities of the parties as matters in controversy, and being matters of common occurrence in the trial courts, obviates the necessity for a separate hearing, or the taking of particular evidence, on the question of awarding of attorney fees or suit money. In the usual, and vast majority of, cases such allowance borders on judicial routine, and is supported by evidence bearing on the circumstances of the parties generally. In the rare case where the aggrieved party desires to demonstrate basic unreasonableness of the charges in question, that right can be protected by appropriate motion to amend or alter the judgment under V.R.C.P. 59(e).

Thus, there was no need for a separate hearing on attorney's fees, and the detailed findings on the general financial circumstances of the parties support the fee award. See *Bissonette v. Gambrel*, 152 Vt. 67, 72, 564 A.2d 600, 602 (1989). Nor is separate evidence of the reasonableness of the fees required. The trial court may rely in a divorce case on its "'own knowledge and experience.'" *Bibens v. Bibens*, 144 Vt. 287, 288, 476 A.2d 134, 135 (1984) (quoting *Young v. Northern Terminals, Inc.*, 132 Vt. 125, 130, 315 A.2d 469, 473 (1974)). If defendant believed that the fees were unreasonable, he was free to pursue his claim through a separate post-judgment motion.

Defendant also contests the court's reliance in assessing fees on its need to compel discovery. He asserts that both sides were equally derelict in responding to discovery. While both parties failed to comply with discovery requests, the critical omission

involved the terms of defendant's annuity, as discussed above. It was within the court's discretion to take into account the failure to provide this information.

Finally, defendant claims that certain charges were for representation on matters not related to the divorce. Again, defendant failed to raise this issue below to allow factual development. The charges were apparently for assistance in clarifying plaintiff's debt and credit problems which the court found had grown out of mutual obligations of the parties. We find no abuse of discretion in the fee award.

*The order of the court distributing the marital property is reversed; in all other respects the divorce judgment is affirmed. The matter is remanded for a new property order.*