**In re Roy H. FARRAR, Debtor.**

**Bankruptcy No. 97–11454.**

United States Bankruptcy Court, D. Vermont.

April 2, 1998.

## MEMORANDUM OF DECISION DENYING LIEN AVOIDANCE

FRANCIS G. CONRAD, Bankruptcy Judge.

Debtor moves to avoid[1] a judicial lien of $16,400 on his homestead awarded to Creditor, his former wife, by the Windham County Family Court in the parties' divorce. *Farrar v. Farrar*, F166–4–95 WmDmd, slip op. at 15 (Vt. Windham County Fam. Ct. Jan. 27, 1997) (Hereinafter "Fam. Ct."). We sustain Creditor's objection, holding that her lien is not avoidable.

### FACTUAL BACKGROUND

Debtor acquired the property, in which he claims a homestead interest, before his 1989 marriage to Creditor. They separated in 1994. On April 5, 1995, Debtor conveyed the property to his son, who was then 19, for $1, reserving a life estate for himself. Creditor "was not consulted or advised of this transfer." Fam.Ct., 8 ¶ 26. Two weeks later, on April 21, 1995, Debtor sued Creditor for a divorce.

"It [wa]s patently obvious to [the Family Court] that the conveyance was made in an effort to deprive the defendant of any share in this marital asset," and the Court refused to "condone such a superficial ploy," finding the conveyance "unenforceable as a fraudulent transfer" under 9 V.S.A. § 2281. Fam. Ct., 12. The Court, determined, based on an extensive factual findings, that "the defendant has a one-quarter interest in the marital residence and property which amounts to $10,000." *Id.*, at 13. The Court also made other monetary awards to Creditor, and held:

All of the monetary awards set forth above, totalling $16,400.00, shall operate as a judgment lien on the homestead premises.... The total monetary award shall be paid within ninety (90) days of this order. In the event plaintiff fails to pay the total

C.C'O. Reis, Hull, Webber & Reis, Rutland, VT, for Debtor.

D.L. Leahy, Windsor, VT, for Dorothy E. Farrar, Creditor.

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to this our uncle Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. §§ 157(b)(2)(A), (K) and (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. 52, as made applicable by Fed.R.Bankr.P. 7052.

monetary award within that period of time, defendant shall be entitled to foreclose on her judgment lien pursuant to V.R.C.P. 80.1 and all other applicable provisions and statutory authority.

*Id.*, 16 ¶ 7.

Debtor filed a Chapter 7 bankruptcy on Oct. 7, 1997. His schedules listed his interest in the homestead as a life estate, valued at $50,000.[2] He claimed a homestead exemption in the life estate.

## DISCUSSION

Debtor moves to avoid Creditor's lien under § 522(f)(1)[3], which provides, in pertinent part, that

the debtor may avoid *the fixing of a lien on an interest of the debtor in property* to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is ... a judicial lien....[4]

Emphasis added. The parties agree that the controlling precedent is the Supreme Court's decision in *Farrey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). They disagree, however, on the nature of the state-law property rights to which we must apply *Farrey*.

Sanderfoot, the debtor in *Farrey*, was attempting to avoid the lien awarded to his ex-wife by a divorce court. In that case, the parties had jointly owned their home during the marriage and the divorce decree awarded the property to *Sanderfoot*, subject to *Farrey's* lien. The Supreme Court parsed the phrase in § 522(f)(1) that we italicized in the quotation above, and concluded that "unless the debtor had the property interest to which the lien attached at some point before the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1)." *Id*, 500 U.S. at 296, 111 S.Ct. at 1829. The lien could not be avoided, the Supreme Court said, because Sanderfoot acquired his fee simple interest at the same time that Farrey acquired her lien. The Court's rationale was that

the lien could not have fixed on Sanderfoot's pre-existing undivided half interest because the divorce decree extinguished it. Instead, the only interest that the lien encumbers is debtor's wholly new fee simple interest. The same decree that awarded Sanderfoot his fee simple interest simultaneously granted the lien to Farrey.... Sanderfoot took the interest and the lien together, as if he had purchased an already encumbered estate from a third party. Since Sanderfoot never possessed his new fee simple interest before the lien "fixed," § 522(f)(1) is not available to void the lien.

*Id.*, 500 U.S. at 299–300, 111 S.Ct. at 1830–1831.

The only issue we have to decide is whether Debtor here "had the property interest to which the lien attached at some point before the lien attached." If he did, Creditor's lien is avoidable; if he didn't, it's not.

Debtor argues that "the interest of the Debtor in the property was in existence prior to the marriage and remained so throughout the marriage. The Debtor and [Creditor] never held the property jointly." Debtor's Memorandum, 2 (Jan. 15, 1998) (97–11454, Document No. 17–1). Creditor's lien attached to his pre-existing interest, Debtor argues, and thus may be avoided.

Creditor responds with two arguments. First, she argues that Debtor went into divorce court with only a life estate in the property, which he reserved when he conveyed the fee simple interest to his son. The divorce decree simultaneously avoided the transfer, and awarded the fee simple interest to Debtor, subject to Creditor's lien. Thus, as in *Farrey*, Debtor's interest was acquired

---

2. Debtor's total assets were listed at $61,450, with total liabilities of $24,600, most of which was Creditor's secured claim of $17,500.

3. All statutory references are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise specifically noted.

4. Creditor makes no claim that her lien falls within the marital exception to avoidance for "a judicial lien that secures a debt ... to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child...." § 522(f)(1)(A).

subject to Creditor's lien, which cannot be avoided.

Creditor also argues in the alternative that even if the fraudulent conveyance had never occurred and record title had been in Debtor's sole name before and during their marriage, Vermont law affords each spouse an interest in all property owned by the other.

> [P]rior to the divorce, the property was "marital property" as defined in 15 V.S.A. § 751 [5] as well as subject to [Creditor's] homestead interest pursuant to 15 V.S.A. § 64.[6] The Debtor did *not* have a sole and separate interest in the property prior to the divorce, or prior to the creation of [Creditor's] lien. As in *Sanderfoot*, the Debtor was awarded his fee simple interest in the property upon the entry of the divorce decree and simultaneously with the creation of [Creditor's] lien securing compensation for the interest she had in the property prior to the divorce.

Creditor's Objection to Debtor's Motion to Avoid Judicial Lien, 2 (Dec. 9, 1997) (97–11454, Document No. 13–1).

Debtor answers both Creditor's arguments by contending that "[t]he divorce proceeding between the parties to this matter, in fact, did not convert the nature of ownership of the homestead property." Debtor's Memorandum, 4 (Jan. 15, 1998) (97–11454, Document No. 17–1). Debtor answers Creditor's first argument, about the effect of the conveyance to Debtor's son, indirectly, in a footnote, that merely points us to "a very curious component of the divorce decree." The Family Court's opinion on the fraudulent conveyance issue "is curious for two reasons," Debtor says.

First, the conveyance appears to have been ineffective and void by virtue of the lack of spousal signature, as required under 15 V.S.A. § 64. Additionally, the purported grantee, Roy Farrar, Jr., was not a party to the divorce proceeding and would have to be a party to any fraudulent conveyance judgment. See *Becker v. Becker*, 138 Vt. 372[, 416 A.2d 156] (1980).

Debtor's Memorandum, 4 n. 1.

Debtor makes no argument about the import of these curiosities, so we are left to fend for ourselves. We infer that the point of the first is to counter Creditor's argument that the Family Court changed Debtor's title by avoiding the fraudulent conveyance to his son. If the conveyance was void and ineffective from the outset, then Debtor in fact enjoyed uninterrupted, fee simple title, to which Creditor's lien attached, making it avoidable. A problem Debtor faces with this argument, however, is the fact that the only real property interest he scheduled on his petition was a life estate.

The point of the second curiosity seems to be that the Family Court's avoidance of the fraudulent conveyance was ineffective, so the son still owns the property, and there's nothing for a lien to attach to.

We believe Debtor is simply wrong about the first curiosity; 15 V.S.A. § 64 applies only to "a homestead interest." Vermont law defines a homestead interest as property "owned and used or kept ... as a homestead." 27 V.S.A. § 101. Here, the parties separated in 1994, when Creditor "moved out of the house." Fam.Ct., *supra*, 5 ¶ 18. Debtor's conveyance to his son was not until April 5, 1995. Thus, Debtor's house was not Creditor's homestead at the time of

---

**5.** 15 V.S.A. § 751(a) provides:

(a) Upon motion of either party to a proceeding under this chapter, the court shall settle the rights of the parties to their property, by including in its judgment provisions which equitably divide and assign the property. All property owned by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court. Title to the property, whether in the names of the husband, the wife, both parties, or a nominee, shall be immaterial, except where equitable distribution can be made without disturbing separate property.

**6.** 15 V.S.A. § 64 provides:

A married woman may convey or mortgage by her sole deed the real estate of which she is seized in her own right to her sole and separate use as she might do by her separate deed if unmarried. She may by her sole deed convey or mortgage and manage and control any other real estate acquired by her ... except that a homestead interest therein and the real estate of which she is seized jointly with her husband may be conveyed or mortgaged only by the joint deed of herself and husband.

**52**

the conveyance, 15 V.S.A. § 64 does not apply, and the conveyance to Debtor's son was valid.

■ The second curiosity is more troublesome. The Family Court avoided the transfer under 9 V.S.A. § 2281,[7] which provides:

> Fraudulent and deceitful conveyances of houses, lands, tenements or hereditaments, or of goods and chattels, and all bonds, bills, notes, contracts and agreements, all actions, judgments and executions, made or had to avoid a right, debt or duty of another person, shall, *as against the party only whose right, debt or duty is attempted to be avoided,* his heirs, executors, administrators and assigns, be null and void.

Emphasis added. Debtor correctly contends that the son is a necessary party to a fraudulent conveyance action under 9 V.S.A. § 2281. Former Vermont Supreme Court Chief Justice Franklin Billings explained why in *Becker*:

> [A] fraudulent conveyance is valid between the parties, and in fact as to the whole world, except those within the protection of the statute; thus the words "null" and "void" are construed to mean voidable only. Therefore such conveyances vest the legal title in the grantee, subject only to be divested by the creditors of the grantor, if they choose to impeach it.

> Not only is the conveyance voidable only as to creditors under the statute, it can become binding upon a creditor who affirms it, and it is not voidable by the conveying party. The transfer, therefore, creates an interest in the grantee which makes the grantee a necessary party to an action for fraudulent conveyance, even though no fraud on the grantee's part need be shown.

*Becker, supra,* 138 Vt. at 380, 416 A.2d 156, *quoting Jones v. Williams,* 94 Vt. 175, 185, 109 A. 803 (1920) (citations omitted).

Fortunately, we are not required to determine who owns what.[8] The only issue before us is whether Creditor's lien is avoidable. We hold it is not, for several reasons. The Family Court's Order clearly gave Creditor a lien on the fee simple interest, not on the life estate Debtor claims. Fam.Ct., 13, 15. We decline to avoid a lien encumbering the interest of someone who is neither a debtor nor a party. In addition, Debtor has failed to prove his case. Debtor claims a life estate, but appears to be valuing his interest at fair market value for the fee simple interest. Under the statute,

> a lien shall be considered to impair an exemption to the extent that the sum of—
>> (i) the lien,
>> (ii) all other liens on the property; and
>> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

§ 522(f)(2)(A). We have no evidence to apply the statute to Debtor's interest.

■ Finally, putting those complications aside, we hold that Creditor's lien would be unavoidable even had Debtor never conveyed the property to his son. Under Vermont law, Debtor's interest was decreed subject to Creditor's lien. Vermont law sweeps every asset of both parties to a marriage into a marital estate, and then redistributes the property of that estate to the divorced parties. The nature of the process itself interrupts the chain of title. The two separate estates created when the dust settles reflect the exercise of a wide-ranging judicial discretion channelled only by the requirements that it do equity, that it not be withheld, and that it not be abused. *Milligan v. Milligan,* 158 Vt. 436, 439, 613 A.2d 1281, 1283 (1992). The fact that Debtor ended up after the marriage with the same title to the house that he had at its inception is not determina-

---

7. The statute was repealed, 1995, No. 179 (Adj.Sess.), § 15, after commencement of the divorce action. Under Vermont law, repeal of a statute does not affect pending actions. 1 V.S.A. § 214.

8. The Case Trustee, however, might want to find out. The Trustee's avoiding powers may also extend to the conveyance to Debtor's son, and Debtor might not be able to exempt the property recovered by the avoidance. § 522(g).

tive. Vermont's law requires a reordering of marital property. The decree of the home to Debtor was contingent on the award to Creditor. Debtor's fee simple did not continue uninterrupted. His old interest was cut off, and a new, lesser interest decreed to him—a house subject to Creditor's mortgage. As Justice White made clear in *Farrey*, the lien is unavoidable "even if the divorce decree did not extinguish the couple's pre-existing interests but instead merely reordered them." *Farrey, supra,* 500 U.S. at 300, 111 S.Ct. at 1831. We elaborate.

Under § 15 V.S.A. S 751(a) *"[a]ll property owned* by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court. Title to the property ... shall be immaterial...." (emphasis added). This Court has held on many occasions that the division of property in divorce proceedings is a matter of wide discretion. *Atwood v. Atwood,* 143 Vt. 298, 300, 465 A.2d 1354, 1355 (1983); *Emmons v. Emmons,* 141 Vt. 508, 510–11, 450 A.2d 1113, 1115 (1982). Further, this Court has held that it does not matter whether the property is held separately, jointly, or as tenants by the entirety; all property owned by either of the spouses is subject to distribution. *LaFarr v. LaFarr,* 132 Vt. 191, 193, 315 A.2d 235, 236 (1974). The trial court has power to distribute the marital assets in whatever manner it finds just and equitable. *Condosta v. Condosta,* 142 Vt. 117, 123, 453 A.2d 1128, 1130 (1982).

*Lynch v. Lynch,* 147 Vt. 574, 576, 522 A.2d 234, 235 (1987)."In making a property settlement, the court may consider all relevant factors, including but not limited to:"

(1) the length of the marriage;

(2) the age and health of the parties;

(3) the occupation, source and amount of income of each of the parties;

(4) vocational skills and employability;

(5) the contribution by one spouse to the education, training, or increased earning power of the other;

(6) the value of all property interests, liabilities, and needs of each party;

(7) whether the property settlement is in lieu of or in addition to maintenance;

(8) the opportunity of each for future acquisition of capital assets and income;

(9) the desirability of awarding the family home or the right to live there for reasonable periods to the spouse having custody of the children;

(10) the party through whom the property was acquired; and

(11) the contribution of each spouse in the acquisition, preservation, and depreciation or appreciation in value of the respective estates, including the nonmonetary contribution of a spouse as a homemaker;

(12) the respective merits of the parties.

15 V.S.A. § 751(b). Vermont's Supreme Court

ha[s] repeatedly held that the "disposition of property pursuant to a divorce decree is a matter of wide discretion for the trial court." *Lalumiere v. Lalumiere,* 149 Vt. 469, 471, 544 A.2d 1170, 1172 (1988). We will not disturb that disposition unless the court's " 'discretion was abused, withheld or exercised on untenable grounds or to a clearly unreasonable extent.' " *Id.* (quoting *Roberts v. Roberts,* 146 Vt. 498, 499, 505 A.2d 676, 677 (1986)).

*Milligan, supra,* 158 Vt. at 439, 613 A.2d 1281 (1992).

■ Under Vermont divorce law, both spouses have an equal right to ask for marital property, and each is free to argue, based on the facts of their particular situation, for the lion's share. Title to the property is immaterial. 15 V.S.A. § 751(a). The Family Court's decree of property was plainly calculated to distribute the marital property in a balanced way, taking into account the statutory factors. It had the power to award the house to Creditor, subject to Debtor's lien or subject to no lien at all.

Debtor cites us to decisions out of Texas that he says support his view, but they do not. *In re Norton,* 180 B.R. 168 (Bkrtcy. E.D.Tex.1995), granted the debtor's motion to avoid an equitable lien imposed by the state divorce court on a homestead he had acquired separately, prior to the marriage, to secure repayment to his ex-wife of contributions she had made to improvements. The

Court also denied the debtor's motion to avoid an equitable lien on the cash surrender value of two of the debtor's life insurance policies. The Court's disposition of each is instructive.

Texas divorce law distinguishes between the separate property acquired by each spouse prior to the marriage, and community property acquired during the marriage. Under Texas law, the Court said, divorce courts may impose equitable liens on one spouse's separate real property to secure the other spouse's right to reimbursement for funds spent to improve that property. However, " 'they may not impress such liens, absent any compensable reimbursement interest, simply to ensure a just and right division.' " *Id*, 180 B.R. at 169 n. 4, *quoting Heggen v. Pemelton*, 836 S.W.2d 145, 146 (Tex.1992). Thus, under Texas law, the lien for reimbursement rights fixed to the debtor's preexisting interest in the homestead. In such a case, the lien was avoidable.

Texas treats all property acquired during a marriage, however, as community property, and each spouse has an interest, no matter in whose name it is actually acquired. Vermont law treats all property the same, whether acquired before or during the marriage. "*All property owned* by either or both of the parties, however and whenever acquired" is part of the marital estate subject to distribution. 15 V.S.A. § 751(a) (emphasis added). Accordingly, we believe that it is Norton's rationale with respect to the lien on insurance policies purchased with community property, that is applicable here.

> For a court to have the power to divide community property, it must have the power to divest the parties of their preexisting interests in that property. If a trial court can divest the nonacquiring spouse of all interest in a parcel of [marital] property, so too can it divest the acquiring spouse of his or her preexisting community interest and revest the acquiring spouse with fee simple title. After such a division the interest[s] of both ex-spouses[ ] in that property are characterized anew.

. . .

[T]he divorce decree governing the property division between Debtor and Creditor was judicially mandated. The state court, in order to achieve a "just and right" division of the marital estate, divested both parties of any community interest in numerous classes of community property which were then assigned to either of the parties as his or her sole and separate property. . . . The decree extinguished the parties' community interest in the policies and awarded both to Debtor as his sole and separate property subject to the equitable lien in favor of Creditor. Since both the Creditor's equitable lien and Debtor's sole and separate property interest in the policies arose at the same time Debtor's motion to avoid Creditor's equitable lien pursuant to § 522(f) must be DENIED.

*Norton, supra*, 180 B.R. at 170, *quoting In re Finch*, 130 B.R. 753, 757 (S.D.Tex.1991).

### CONCLUSION

Under Vermont law, each spouse has an interest in all marital property as defined by 15 V.S.A. § 751(a). In this case, the Family Court exercised its discretion to allocate the marital estate between Debtor and Creditor, awarding the house to Debtor, subject to Creditor's lien. The Family Court's decree extinguished the marital interest each party had in all the property in the marital estate, and redistributed the property, creating new interests in place of the old. Debtor "took the interest and the lien together, as if he had purchased an already encumbered estate from a third party. Since [Debtor] never possessed his new fee simple interest before the lien 'fixed,' § 522(f)(1) is not available to void the lien." *Farrey, supra*, 500 U.S. at 300, 111 S.Ct. at 1830–31. This result

> accords with the provision's main purpose. [T]he legislative history suggests that Congress primarily intended § 522(f)(1) as a device to thwart creditors who, sensing an impending bankruptcy, rush to court to obtain a judgment to defeat the debtor's exemptions. This is not what occurs in a divorce proceeding such as this. [Creditor] obtained the lien not to defeat [Debtor's] pre-existing interest in the homestead but to protect her own pre-existing interest in the homestead that was fully equal

to that of her spouse. The divorce court awarded the lien to secure an obligation the court imposed on the husband in exchange for the court's simultaneous award of the wife's ... interest to the husband. [T]o use the Code to deprive a spouse of this protection would neither follow the language of the statute nor serve the main goal it was designed to address.

*Id.*, 500 U.S. at 300–01, 111 S.Ct. at 1831.

Creditor is to submit an order consistent with the factual findings and legal conclusions herein within 10 days of the date this Memorandum of Decision is issued. Debtor shall have five days to object to the form of the order.