**In re Brian D. FORANT, Debtor.**

**Corinne R. Devenger, Plaintiff,**

**v.**

**Brian D. Forant, Defendant.**

**Bankruptcy No. 02–10643.**
**Adversary No. 02–1049.**

United States Bankruptcy Court.
D. Vermont.

Aug. 27, 2004.

Richard A. Scholes, Montpelier, VT, for Debtor/Defendant.

## MEMORANDUM OF DECISION GRANTING ANEW THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COLLEEN A. BROWN, Bankruptcy Judge.

## I. PERTINENT PROCEDURAL BACKGROUND

On September 26, 2003, this Court entered a Memorandum of Decision and Order granting Plaintiff's Motion for Summary Judgment. *See* docs. # 44 and # 45. Since the Defendant did not file a timely response to the Plaintiff's Motion, the Court treated the summary judgment motion as unopposed, accepted as true the Plaintiff's Statement of Undisputed Facts and granted judgment in favor of the Plaintiff. The Defendant appealed. The district court reversed and remanded the matter back to this Court, finding that the record was unclear as to whether the Defendant, proceeding *pro se* during the pendency of the Plaintiff's Motion for Summary Judgment, had adequate notice of the consequences of failing to respond to the Motion. *See* Op. & Order at 4 (doc. # 64).

In response to the district court's ruling, this Court scheduled a status hearing; however, it subsequently cancelled the hearing and directed the parties to file papers instead.[1] *See* doc. # 74. In re-

sponse to that direction, the Defendant filed a Response to Plaintiff's Motion for Summary Judgment (hereinafter, the "Opposition") accompanied by his Statement of Undisputed Fact [*sic* ]; the Plaintiff filed a combined Response and Motion to Dismiss, and the Defendant then filed an objection to the timeliness of that Response. *See* docs.# 78, # 79, # 81 and # 84, respectively.

## II. THE ISSUE PRESENTED

Upon reconsideration of the Plaintiff's Motion for Summary Judgment, the Court finds that the threshold issue is whether the subject 401k retirement account and the subject 75% portion of the Vermont Municipal Employee's retirement account ("VMERA") (hereinafter, collectively the "subject account properties") are part of the Defendant's bankruptcy estate. If so, then the Court must determine whether the Defendant–Debtor's obligation (created by a family court final divorce decree) to transfer these properties to the Plaintiff is excepted from discharge pursuant to 11 U.S.C. § 523(a)(15).

The Plaintiff contends that (a) the subject account properties are not property of the Defendant's bankruptcy estate, but (b) to the extent that the Court determines otherwise, the Defendant's obligation to transfer these properties should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(15).

---

1. After the Court scheduled the status hearing, the Defendant filed an Emergency Motion to Reinstate Appellant's [Defendant's] 401k Account. *See* doc. # 69. In its Order cancelling the status hearing, the Court directed the Defendant to file supplemental papers to show cause why his Motion to Reinstate should not be denied based upon his failure to obtain a stay pending appeal (*i.e.,* his failure to obtain an order prohibiting the transfer of the subject account properties to the Plaintiff during the pendency of the Defendant's appeal). The Defendant's Response to the Plaintiff's Motion for Summary Judgment included his argument on this issue. However, the Court need not address this issue as its granting of the Plaintiff's Motion for Summary Judgment—for the reasons further discussed herein—renders the Defendant's Motion to Reinstate moot.

### III. THE CURRENT PROCEDURAL POSTURE

The Court finds no reason to address the points raised in Plaintiff's Response to the Defendant's Opposition as it adds nothing to the papers already before the Court for consideration. Thus, the Court makes its determination based upon the arguments set forth in the Plaintiff's Motion for Summary Judgment and the papers related thereto, and the Defendant's Opposition and the papers related thereto.

Upon remand from the district court, this Court considers the Plaintiff's Motion for Summary Judgment anew. Since its original Memorandum of Decision and Order, which the district court reversed and remanded, this Court has had the opportunity to address the effect of a divorce on ownership of, and title to, marital property, *see In re Hutchins*, 306 B.R. 82, 97 (Bankr.D.Vt.2004), and as a result, it analyzes this proceeding with a slightly different perspective than it had at the time of the initial decision in this matter.

### A. The Summary Judgment Standard

Pursuant to FED. R. BANKR P. 7056, judgment should be entered in favor of the moving party if the motion for summary judgment and supporting documents establish that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. "A genuine issue exists only when the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The substantive law will identify which facts are material. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See id.* at 247, 106 S.Ct. 2505. Factual disputes that are irrelevant or unnecessary are not material. *See id.* Furthermore, materiality is determined by assessing whether the fact in dispute, if proven, would satisfy a legal element under the theory alleged or otherwise affect the outcome of the case. *See id.* A court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. *See Cruden v. Bank of New York*, 957 F.2d 961, 975 (2d Cir.1992). In making its determination, a court's sole function is to determine whether there is any material dispute of fact that requires a trial. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *see also Delaware & Hudson Ry. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir.1990).

### B. Summary Judgment and the Local Rules

Pursuant to the local rules of this Court, all material facts in a movant's statement of undisputed facts are "deemed to be admitted unless controverted by a statement of disputed material facts filed by the opposing party." Vt. LBR 7056–1(a)(3). Here, the Defendant did not controvert or oppose the Plaintiff's Statement of Undisputed Facts (doc. # 24); rather, he filed his own Statement of Undisputed Facts (doc. # 79). Since this Court is required to view all evidence in the light most favorable to the Defendant, as the nonmoving party, and, likewise, to draw all inferences in the Defendant's favor, the Court will view the Defendant's Statement of Undisputed Facts as controverting the Plaintiff's Statement of Undisputed Facts.

### C. Facts: Undisputed, Disputed, Immaterial and Irrelevant

The Court has considered only those facts that are relevant to whether the subject account properties are property of the Defendant's estate. For convenience, a

comparison of the Plaintiff's representations with the Defendant's disputes (construed in the light most favorable to the Defendant), if any, is provided:

1. **Plaintiff's allegation:** The provisions in the Plaintiff and Defendant's [2] Final Order and Decree of Divorce (dated Jan. 23, 2002) ("the Divorce Decree") transferred 100% of the property rights of the Defendant's 401k savings plan to the Plaintiff and 75% of the property rights to the marital portion of the Defendant's VMERA pension plan to the Plaintiff; *see* Pl.'s Stmt Undisputed Facts at ¶ 1.

   *Defendant's alleged dispute: The Plaintiff did not comply with the family court's order regarding the preparation of the required QDRO[3] by the deadline set by the family court.* See Def.'s Stmt Undisputed Facts at ¶¶ 2–5, 20.

2. **Plaintiff's allegation:** Pursuant to the Divorce Decree, the transfer of the property obligation occurred on January 23, 2001; *see* Pl.'s Stmt Undisputed Facts at ¶ 2.

   *Defendant's alleged dispute: The family court's August 7, 2001 Entry Order that set a deadline by which the Plaintiff was to have the QDRO prepared and executed changed the provisions of the Divorce Decree.* See Def.'s Stmt Undisputed Facts at ¶ 3.

3. **Plaintiff's allegation:** The Defendant filed for bankruptcy relief on May 8, 2002; *see* Pl.'s Stmt Undisputed Facts at ¶ 3.

   *Defendant's alleged dispute: None.*

4. **Plaintiff's allegation:** The findings of fact and conclusions of law in the Divorce Decree are accurate; *see* Pl.'s Stmt Undisputed Facts at ¶ 4.

   *Defendant's alleged dispute: None.*

Since the Defendant did not dispute them, the Plaintiff's undisputed facts enumerated as 3 and 4 above are deemed admitted. *See* Vt. LBR 7056–1(a)(3). Further, as discussed below, the Court finds that the Defendant's dispute of the statements enumerated as 1 and 2 above are immaterial as to whether the subject account properties are property of his bankruptcy estate. Accordingly, the Court finds that there is no genuine dispute as to any material fact and will proceed to determine which party is entitled to judgment as a matter of law.

## IV. DISCUSSION

### The Threshold Issue: Are the Subject Account Properties Property of the Defendant's Estate?

■ While the Plaintiff contends that the Defendant's obligation to transfer the subject account properties is excepted from discharge under 11 U.S.C. § 523(a)(15), her fundamental argument is that these accounts are not property of the Defendant's bankruptcy estate. Section 541 of the Bankruptcy Code provides that a debtor's estate is compromised of all interests, both legal and equitable, existing as of the commencement of the case. *See* 11 U.S.C. § 541(a); *Hutchins,* 306 B.R. at 97. The Court will therefore begin with an analysis of whether the Defendant's bankruptcy estate has any interest in the subject account properties. If he does not, the Plaintiff is entitled to summary judgment and the Court need not address the question of whether this obligation should be excepted from discharge under § 523(a)(15).

---

2. For convenience, the Court may refer to the Plaintiff and Debtor collectively as "the Parties".

3. "QDRO" is the acronym for a qualified domestic relations order.

■ It is a long-held tenet of bankruptcy law that property rights are decided by state law. *See Butner v. United States,* 440 U.S. 48, 55–56, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Morton,* 866 F.2d 561, 563 (2d Cir.1989). In the context of divorce cases, Vermont family courts are given jurisdiction to determine property settlements between former spouses:

> (a) Upon motion of either party to a proceeding under this chapter, *the court shall settle the rights of the parties to their property,* by including in its judgment provisions which equitably divide and assign the property. *All property owned* by either or both of the parties, however and whenever acquired, *shall be subject to the jurisdiction of the court.* Title to the property, whether in the names of the husband, the wife, both parties, or a nominee, shall be immaterial, except where equitable distribution can be made without disturbing separate property.

15 V.S.A. § 751(a) (emphasis added). Thus, it is proper for the Vermont state courts to determine property interests between spouses as a part of a divorce proceeding.

### A. Case Law Guidance

■ This Court has recently held:

> [A] divorce proceeding under Vermont law sweeps every asset ... into a marital estate, and then redistributes the property of that estate to the divorced parties. A divorce estate contains all the parties' property, no matter how the parties acquired them, with the caveat that actual title is immaterial. The nature of the process interrupts the chain of title. Upon entering the divorce decree, the family court extinguishe[s] the marital interest each party had in the marital estate, and redistribute[s] the

property, creating new interests in place of the old.

*Hutchins,* 306 B.R. at 92 (quoting and citing *In re Farrar,* 219 B.R. 48, 52, 53, 54 (Bankr.D.Vt.1998) (Conrad, J.)) (internal quotations omitted). Importantly, in *Hutchins* the Court noted: "Although this Court recognized in *Farrar* that a divorce decree distributes the marital properties in accordance with specified terms, it held that *the divorce decree is not a conveyance instrument* per se *upon entry." Id.* (citing 15 V.S.A. § 754).

The same year this Court decided *Farrar,* it also decided *Paradis v. Paradis (In re Paradis),* 1998 WL 614663 (Bankr.D.Vt. 1998) (Conrad, J.). In *Paradis,* the debtor/husband and his wife were divorced before the debtor filed for bankruptcy protection. *See id.* In its divorce decree, the family court awarded alimony and divided property. *See id.* The ex-wife was awarded, *inter alia,* one-half of her ex-husband's pension account and this award was to be incorporated into a QDRO. *See id.* Before the QDRO was filed, however, the debtor filed bankruptcy. *See id.* Thereafter, the ex-wife commenced an adversary proceeding under 11 U.S.C. §§ 523(a)(5) and (a)(15) seeking a determination that her interest in the pension account was nondischargeable. *See id.* at *1. Interestingly, the Court noted:

> Due to the eccentricities of the Bankruptcy Code, [the ex-wife] seeks a nondischargeability determination under §§ 523(a)(5) & (15). Outside of bankruptcy, the proceeding would be better described as a declaratory judgment action seeking a determination of who owns what interests in the property.

*Id.* at *1, n. 3. Finding the award of the pension account was a property distribution, the Court quickly dispelled of § 523(a)(5)'s applicability. Moreover, the Court was not persuaded by the ex-hus-

band's argument that since the QDRO was not issued before the bankruptcy filing, this somehow transformed the property interest awarded to the ex-wife into an obligation subject to a dischargeability action:

> The automatic stay does not willy-nilly create, destroy, or transfer any property rights. It seeks only to preserve the *status quo.* We hold today that when a final order of divorce has issued that contains a property division with provisions for a QDRO and the former spouse files bankruptcy before the QDRO can be executed and filed, all the non-debtor ex-spouse had to do is file a motion for relief from stay. Upon the filing of a contested motion for relief from stay we can make the initial summary determination whether the issue is one that involves property of the estate or dischargeability. If we are able to determine that the non-debtor ex-spouse has a QDRO property interest, we will spare the parties and this court from the expense of conducting an adversary proceeding.

*Id.* at *2. Thus, as to the pension plan, the Court granted the ex-wife's motion for summary judgment. *See id.* at *3.

Further, this Court finds the factual and procedural posture of *In re Greenwald,* 134 B.R. 729 (Bankr.S.D.N.Y.1991) (Conrad, J., sitting by designation) analogous to the instant case. In *Greenwald,* the debtor and his wife divorced prior to his filing for bankruptcy protection. *See id.* at 730. The family court determined the ownership of property and, pursuant to the divorce decree, directed a distribution of the property in accordance with its decision. *See id.* at 729–30. The family court awarded the ex-wife a 50% interest in the marital estate of one half of the debtor's shares in his employee stock ownership plan, a cash award, and a transfer of the

debtor's IRA account (hereinafter, "the account properties"). *See id.* The debtor appealed the family court's decision, but the appellate court found the debtor's challenge to the divorce court's decision to be without merit. *See id.* After further legal maneuvers in state court, the debtor filed for bankruptcy protection under chapter 11. *See id.* The ex-wife moved to dismiss her former husband's case or, alternatively, for relief from stay to pursue an action in state court to secure possession of the property awarded to her. *See id.* After an evidentiary hearing to determine whether the property awarded to the ex-wife was property of the debtor's bankruptcy estate, the *Greenwald* court held that it was not. *See id.* The *Greenwald* court reasoned that the divorce decree fixed the parties' interest in the account properties and that the ex-wife's rights to the distributive award vested upon the entry of the divorce decree. *See id.* at 731. Thus, having vested prior to the debtor's bankruptcy filing, the account properties were not property of the estate. *See id.* (citing *In re Moore,* 5 B.R. 67 (Bankr. N.D.Tex.1980)); *see also, e.g., In re DeLauro,* 207 B.R. 412, 417–18 (Bankr.D.N.J. 1997) (holding that upon execution of a property agreement incorporated into a divorce decree, constructive trust arose in favor of ex-wife; therefore, the property in constructive trust never became property of ex-husband/debtor's bankruptcy estate).

### B. The Instant Case

■ There is no dispute here that prior to the Defendant's filing of the instant bankruptcy case, the Plaintiff and Defendant were divorced. Likewise, the Parties do not contest that in connection with its divorce decree, the Caledonia County family court issued a decision dividing the Parties' property. Among its division of property, that court decided:

*401k account and VMERA:* Ms. Forant shall have sole ownership and use of the entire 401k account subject to the outstanding loan. Mr. Forant shall not borrow any additional amounts from the 401k account. Ms. Forant shall be solely responsible for any and all additional loan payments on the account as of January 30, 2001.

Ms. Forant shall have 75% of the marital portion of the VMERA. The marital portion shall be determined by the so-called "coverture fraction." The denominator of the fraction shall be the total number of years Mr. Forant worked at Hardwick Electric at the time of his retirement. The nominator shall be the total number of years the parties have been married, 12.5 years. Ms. Forant shall have the proper qualified domestic relations order prepared to accomplish this provision.

*Forant v. Forant,* No.: 16–1–97 Cadm, Decision: Property Division at 6 [incorporated into Final Order and Decree of Divorce] (Vt., Cal.Fam.Ct. Jan. 23, 2001), attached as Ex. # 1 to Pl.'s Compl. (doc. # 1). Thus, pursuant to 15 V.S.A. § 751(a), the Caledonia County family court determined the parties' interests in the subject account properties: Plaintiff has a 100% interest in the 401k retirement account and a 75% interest in the marital portion of the VMERA. Therefore, as of the date of the family court order—and hence, on the date of his bankruptcy filing—the Defendant had no interest in the 401k account and had only a remainder balance interest in the VMERA. Therefore, these accounts never came into the Defendant's bankruptcy estate.

■ The Court rejects the Defendant's argument that the subject account properties have not become the Plaintiff's property because the required QDRO was never prepared. This is a red herring. The Court has already acknowledged that, upon entry of the divorce decree, the family court extinguished the marital interest each party had in the marital estate, and redistributed the property, creating new interests in place of the old. *See Hutchins,* 306 B.R. at 92 (quoting and citing *In re Farrar,* 219 B.R. 48, 52, 53, 54 (Bankr. D.Vt.1998) (Conrad, J.)). The necessary paperwork required to convey title of the subject account properties, *i.e.,* the preparation, execution and filing of the QDRO, is merely ministerial. A QDRO is the mechanism for recognizing an alternate payee's (here, the Plaintiff's) right to receive all or part of benefits due a participant (here, the Defendant) under a pension, profit-sharing, or other retirement benefit plan that satisfies the provisions of § 414 of the Internal Revenue Code and is exempt from the ERISA rule prohibiting the assignment of plan benefits. *See* BLACK'S LAW DICTIONARY 1254 (7th ed.1999); *see also In re Gendreau,* 122 F.3d 815, 817–19 (9th Cir.1997) (discussing the purpose of a QDRO and instructing that lack of issuance of such an order cannot bestow on a debtor greater rights than he or she had pre-petition).

■ The Court finds the execution and delivery of a QDRO is comparable to the issuance of a certificate of non-redemption in a strict foreclosure proceeding; the issuance of a certificate of non-redemption has no effect on a mortgagor's lack of interest in the property. *See, e.g., CUC Mortgage Corporation v. Cavacas (In re Cavacas),* Ad. Pro. No.: 03–1063, slip op. at 7, 8, 2004 WL 1661008 (Bankr.D.Vt. July 22, 2004) ("instructing that full and absolute title is in the mortgagee upon the expiration of the redemption period, regardless of the existence of any other acts the mortgagee must complete to defend title against subsequent purchasers or trustees") (citing *In re Pellegrino,* 284

B.R. 326, 328 n. 8 (Bankr.D.Conn.2002)); *see also generally Canney v. Merchants Bank (In re Canney)*, 284 F.3d 362 (2d Cir.2002) (holding that a mortgagee has full, unified title, absolute upon the expiration of the redemption periods, without regard to the issuance of a certificate of non-redemption, the recording of a certified copy of the foreclosure judgment, or the issuance of a writ of possession). Whether or not the Plaintiff has caused the QDRO to be prepared, executed or filed does not change the fact that, by its divorce decree, the family court extinguished the Defendant's marital interest in the subject account properties and redistributed that property to the Plaintiff, creating a new interest in place of the old. *See Hutchins*, 306 B.R. at 92; *In re Farrar*, 219 B.R. at 52–54; *see also Gendreau*, 122 F.3d at 819 (instructing that a QDRO merely authorizes a plan administrator to pay a former spouse his or her interest in a pension plan; it does not create an interest in the pension plan). Accordingly, any issue the Defendant has with the Plaintiff's alleged non-compliance with the family court's divorce decree and subsequent orders needs to be addressed in family court, not here.

The Court has examined the family court's divorce decree, including the incorporated decision regarding property, *see, e.g., Chudy v. Cooper (In re Cooper)*, 263 B.R. 164, 165 (Bankr.D.Conn.2001), *aff'd* 91 Fed.Appx. 713 (2004) (instructing that a bankruptcy court should scrutinize a state court divorce decree to determine what was intended). Based upon that document, this Court is convinced that a transfer of property was intended and effected. This case is distinguishable from those where property distributions placed liability on the debtor for a debt owed by one or both of the spouses at the time of divorce; this Court has found some obligations of that nature to be non-dischargeable under

§ 523(a)(15). *See, e.g., Rushlow v. Rushlow (In re Rushlow)*, 277 B.R. 216 (Bankr. D.Vt.2002) (by terms of divorce decree, ex-wife was required to pay ex-husband for a portion of property distributed to her); *Michael v. Forcier (In re Forcier)*, 2003 WL 22846359 (Bankr.D.Vt. Nov.26, 2003) (provision in divorce decree required ex-husband to pay ex-wife a sum certain towards the marital debt). This case involves the actual transfer of property under a divorce decree.

State law controls whether property in possession of a debtor on his or her petition date is held in constructive trust. *See Superintendent of Ins. State of New York v. Ochs (In re First Central Fin'l Corp.)*, 377 F.3d 209 (2d Cir.2004). "It is a familiar principle of equity that a trust is implied whenever the circumstances are such, that the person taking the legal estate, whether by fraud or otherwise, cannot enjoy the beneficial interest without violating the rules of honesty and fair dealing." *Legault v. Legault*, 142 Vt. 525, 529, 459 A.2d 980 (Vt.1983) (further citations omitted). A "constructive trust is a tool used by courts to prevent unjust enrichment and is a formula through which the conscience of equity finds expression." *Id.* (internal quotation omitted); *see also In re Mahoney's Estate*, 126 Vt. 31, 34, 220 A.2d 475 (Vt.1966); *McGann v. Capital Sav. Bank & Trust Co.*, 117 Vt. 179, 189, 89 A.2d 123 (Vt.1952). "Constructive trusts have been imposed in a variety of situations where equity had dictated such a remedy." *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 360 (2d Cir.1999) (listing cases). "What is necessary is that the court identify a party who is holding property 'under such circumstances that in equity and good conscience he ought not to retain it.'" *Id.* at 361 (further citation omitted). Thus, the Court also finds that upon entry of the divorce decree, a con-

**160**

structive trust was created whereby the Defendant held the subject account properties on behalf of the Plaintiff. *See, e.g., In re DeLauro,* 207 B.R. 412, 417 (Bankr. D.N.J.1997). Accordingly, the subject account properties were never a part of the Defendant's bankruptcy estate, and this Court has no jurisdiction over said accounts.

## V. CONCLUSION

As directed by the district court, this Court has given the Defendant an opportunity to respond to the Plaintiff's Motion for Summary Judgment and he has done so. Having considered the Plaintiff's Motion for Summary Judgment anew and the Defendant's Opposition thereto, and finding no material facts in dispute, it is proper for the Court to grant summary judgment.

The Court finds that the Plaintiff was the owner of the subject account properties prior to the Defendant filing for bankruptcy protection; and to the extent they remain in the Defendant's name he holds them in trust for the Plaintiff. Hence, the subject account properties were never property of the Defendant's bankruptcy estate and, therefore, cannot be the subject of a dischargeabilty dispute in the Defendant's bankruptcy case. Thus, the Court grants the Plaintiff's Motion for Summary Judgment. This ruling renders all other outstanding motions in this adversary proceeding moot.

This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law.