■ In the Matter of Long Island Lighting Company, Petitioner, v Commissioner of Taxation and Finance of the State of New York et al., Respondents. [652 NYS2d 640] —White, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which sustained a mortgage recording tax assessment imposed under Tax Law article 11.

To assist petitioner in effectuating its agreement with Niagara Mohawk Power Corporation (hereinafter NiMo) to fund 18% of the construction costs of a nuclear power plant, the New York State Energy & Research Developmental Authority (hereinafter NYSERDA) agreed to issue on petitioner's behalf $150 million in tax-exempt Pollution Control Revenue Bonds. As a condition of issuance, petitioner was required to obtain two letters of credit guaranteed by NiMo, one from Citibank, N.A. and another from Bankers Trust Company, which totaled $163 million and expired on March 16, 1989. In exchange for NiMo's guarantee, petitioner executed a $165 million note in favor of NiMo that was partially secured by a $85 million fourth mortgage on petitioner's properties (hereinafter the 1986 fourth mortgage). When this mortgage was recorded on March 31, 1986, petitioner paid the full amount of the mortgage recording tax as required by Tax Law § 253. Petitioner also granted NiMo *pari passu* rights in a third mortgage held by Citibank. In April 1986, petitioner, Citibank and NiMo entered into a spreader agreement which, *inter alia*, consolidated the third mortgage with the 1986 fourth mortgage. Thereafter, in June 1986, NiMo assigned its interest in the aforesaid mortgages to Citibank and Bankers Trust.

In early 1989, petitioner negotiated extensions of the letters of credit and NiMo's guarantees. It then entered into negotiations with Citibank to refinance its bond obligations, which culminated in an agreement by Citibank to replace the Bank-

ers Trust letter of credit and to eliminate NiMo's guarantees. In exchange Citibank required petitioner to have NiMo assign the $165 million promissory note to it and provide it with the same security given to NiMo, an $85 million fourth mortgage with *pari passu* rights in the third mortgage.

The actual financing was accomplished through the execution of a series of documents that were simultaneously exchanged and recorded on October 26, 1989. Among these documents was a $85 million fourth mortgage between petitioner and Citibank (hereinafter the 1989 fourth mortgage), an assignment of rights in the third mortgage and 1986 fourth mortgage from Bankers Trust and Citibank to NiMo, and NiMo's surrender of rights in the third mortgage and 1986 fourth mortgage to petitioner. When these documents were recorded, petitioner paid the full amount of the mortgage recording tax under protest. After the State Department of Taxation and Finance denied petitioner's application for a refund, petitioner's request for administrative relief was denied by an Administrative Law Judge and respondent Tax Appeals Tribunal. This proceeding ensued.

Petitioner's liability for the payment of the mortgage recording tax depends upon whether the 1989 fourth mortgage was a new mortgage or was merely a substitute for the 1986 fourth mortgage (*see, Matter of Bay View Towers Apts. v State Tax Commn.*, 40 NY2d 856, 857). The Tribunal, applying the doctrine of merger, found that it was a new mortgage since, when NiMo surrendered its interest in the 1986 fourth mortgage to petitioner, that mortgage ceased to exist as it merged into the fee and thus could not be exchanged with the 1989 fourth mortgage.

We begin our analysis by noting that when an owner of a fee simultaneously holds the legal and equitable titles, it does not necessarily result in a merger of the equitable into the legal title since an owner may elect to hold the titles separately provided the rights of creditors and third parties do not intervene (*see, Matter of Marocco v State of New York*, 46 AD2d 572, 574; *Imar Mtge. Corp. v Ticoli Realty Corp.*, 232 App Div 635, 639, *affd* 257 NY 594; *Matter of Nochomov*, 206 Misc 290). Thus, the determinative issue is whether the owner intended there be a merger, which must be discerned from all the circumstances, including the effect a merger would have on the owner's interest (*see,* 78 NY Jur 2d, Mortgages and Deeds of Trust, § 320, at 161). In pursuing this inquiry, we take cognizance of the fact that the doctrine of merger is disfavored (*see, Jemzura v Jemzura*, 36 NY2d 496, 502; *Arch Assets v AL*

*& LP Realty Co.*, 227 AD2d 295) and that the intent to merge must be clear (78 NY Jur 2d, Mortgages and Deeds of Trust, § 319, at 160).

Viewed in this perspective, the record indicates that petitioner did not intend a merger. Although, as the Tribunal pointed out, NiMo's surrender did not contain an express statement against merger, other documents executed on October 26, 1989 evince such an intention. Specifically, the 1989 fourth mortgage stated, in part, that "it is the intent of the parties hereto not to cancel or extinguish [petitioner's] Bond Obligations, but to continue and confirm them". Additionally, an intercreditor agreement recites that "it is the intention of [petitioner] to continue and confirm * * * the security, which has remained unchanged since the issuance of the Bonds". The 1986 fourth mortgage is clearly encompassed within these statements as it was an integral component of the obligations petitioner assumed in connection with the issuance of the bonds since it provided security for those obligations.

A further indication of petitioner's intent to avoid a merger is that the parties carefully structured the exchange and recordation of the pertinent documents to insure that the lien created by the 1989 fourth mortgage was established and recorded prior to NiMo's surrender of the 1986 fourth mortgage. Lastly, a merger would not have increased petitioner's equity in its property since it was obligated to provide petitioner with the same amount of security furnished to NiMo.

Having found the doctrine of merger inapplicable, we conclude that petitioner was not obligated to pay the mortgage recording tax when it recorded the 1989 fourth mortgage since that mortgage did not represent new debt or further indebtedness but was merely an exchange of one mortgage with a prior identical one (*see, Matter of Bay View Towers Apts. v State Tax Commn.*, 48 AD2d 86, 89, *affd* 40 NY2d 856). For this reason, we shall grant the petition.

Mercure, J. P., Yesawich Jr., Peters and Carpinello, JJ., concur. Adjudged that the determination is annulled, with costs, and petition granted.