**In re Gloria B. LaBORDE, Debtor.**

**Bankruptcy No. 98–24430.**

United States Bankruptcy Court, W.D. New York.

March 29, 1999.

George Mitris, Victor, New York, for debtor.

George M. Reiber, Rochester, New York, Chapter 13 Trustee.

## DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

On November 25, 1998, Gloria Bernice LaBorde (the "Debtor") filed a petition initiating a Chapter 13 case.[1] On the schedules and statements required to be filed by Section 521 and Rule 1007, the Debtor indicated that: (1) she was a one-half owner of a principal residence located at 5007 South Hill Road, Canandaigua, New York (the "Residence"), which had a current fair market value of $84,000 and secured claims against it in the amount of $115,814; (2) on October 6, 1997, she had filed a Chapter 7 case;[2] (3) as a result of her Chapter 7 case she had no unsecured creditors; (4) she had excess monthly income over expenses of $27; (5) before October 6, 1997 when she filed her Chapter 7 case, Citibank (New York), N.A. ("Citibank"), Chase Manhattan Bank, USA ("Chase USA"), Chase Manhattan Bank ("Chase") and FCC National Bank ("FCC") had taken judgments against her former spouse, David F. LaBorde ("LaBorde"), when he was still a co-owner of the Residence; and (6) each of the judgments became a judgment lien (collectively, the "Judgment Liens") on the Residence when they were docketed in the Ontario County Clerk's Office.

On December 1, 1998, the Debtor filed a motion pursuant to Section 522(f) (the "Avoidance Motion") that requested an order avoiding the Judgment Liens on the Residence. The Motion was filed pursuant to a Default Procedure, established by an April 13, 1993 Standing Order, which provided that, "in the event no written opposition is served and filed, no hearing on the motion will be held on the return date and the Court will consider the motion as unopposed." However, a written guide to the implementation of the § 522(f) Default Procedures states that, "in the absence of filed written opposition, no hearing will be held nor request for adjournments recognized. The papers will be submitted and should they meet with the Court's approval,[3] the attached order will issue no earlier than one day after the return date of the motion."

The Avoidance Motion alleged that: (1) on May 23, 1991 the Debtor had become a record owner of the Residence when a May 22, 1991 Deed to the Debtor and LaBorde, as husband and wife, was recorded; (2) as of November 24, 1998, the Residence had a fair market value of $78,000, as set forth on an

---

1. The petition was signed by the Debtor on November 19, 1998.

2. A review of the Debtor's prior Chapter 7 case file indicated that: (1) in her schedules the Debtor stated that she was a one-half owner of the Residence and was divorced; (2) the case was administered as a no asset case, and the Debtor received a discharge on January 7, 1998; (3) an October 16, 1997 appraisal of the Residence indicated that it had an estimated fair market value of $84,000; (4) a December 1, 1997 application for the abandonment of the Residence indicated that the Debtor was still a one-half owner of the Residence; (5) with the consent of the Chapter 7 Trustee, the estate's interest in the Residence was abandoned on December 15, 1997; (6) no request pursuant to Section 522(f) was filed by the Debtor for the avoidance of any judgment liens; and (7) the Debtor had been discharged from unsecured claims of in excess of $51,000.

3. This condition is intended to advise the parties that notwithstanding any default by a respondent, the Court will not grant a movant relief that it is not entitled to under controlling law.

attached appraisal;[4] (3) the existing first mortgage on the Residence had an outstanding balance of $74,500; and (4) the Judgment Liens should be avoided because they impaired the Debtor's $10,000 New York State homestead exemption in the Residence.

No opposition was interposed to the Avoidance Motion. However, on January 19, 1999, after the Motion had been stricken from the January 6, 1999 motion calendar because there had been no opposition, the Court forwarded a letter to the attorney for the Debtor and each of the judgment creditors. The letter indicated that the Court was adjourning the Avoidance Motion to the Debtor's March 8, 1999 Chapter 13 confirmation hearing.

After receiving the Court's January 19, 1999 correspondence, the attorney for the Debtor inquired as to why the Avoidance Motion had been adjourned rather than granted, since none of the judgment creditors had opposed the Motion. The Debtor's attorney was advised that the Court was concerned that: (1) the Judgment Liens could not be avoided to the extent that they were liens on the interest of LaBorde in the Residence, since he was a non-debtor who appeared from the Debtor's schedules to still be a co-owner of the Residence, however, the proposed order provided for the "cancellation" of the judgments; and (2) if, as the result of the divorce of the Debtor and LaBorde, the Debtor was now the sole owner of the Residence, the Judgment Liens might not be avoidable pursuant to Section 522(f)(1) because, as required by the Decision of the United States Supreme Court in *Farrey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991) ("*Sanderfoot*"), the Debtor may not have possessed the interest to which those Judgment Liens affixed before the Liens attached.

On January 27, 1999, the attorney for the Debtor filed a Memorandum of Law which asserted that: (1) the Debtor and LaBorde held title to the Residence as tenants by the entirety at the time the judgments against her former spouse became judgment liens against the Residence; (2) under New York Law, when spouses hold property as tenants by the entirety, they each hold an indivisible interest in the property and are deemed seized of the whole property; (3) because the Debtor had an indivisible, seized of the whole, tenancy by the entirety interest in the Residence at the time the Judgment Liens attached, she possessed the necessary property interest required by *Sanderfoot*.[5]

After the March 8, 1999 confirmation hearing, at the request of the Court, the attorney for the Debtor made an additional written submission which indicated that: (1) on January 2, 1997, a divorce decree (the "Divorce Decree") was entered which terminated the marriage between the Debtor and LaBorde and required that the parties cooperate to sell the Residence and pay various marital debts with the proceeds; and (2) on or about October 20, 1998, LaBorde had executed and delivered a quitclaim deed of his interest in the Residence to the Debtor in settlement of a proceeding which she had commenced in State Court in connection with the Divorce Decree.

The information regarding the Divorce Decree and the execution and delivery of the quitclaim deed, together with the information contained in the Avoidance Motion, provided the following time-line:

| | |
|---|---|
| May 21, 1991 | The Debtor and LaBorde take a deed to the Residence as tenants by the entirety. |
| February 1, 1996 | The Citibank judgment against LaBorde is docketed. |
| January 2, 1997 | The Divorce Decree is entered terminating the marriage between the Debtor and LaBorde, creating a tenancy in common ownership interest in the Residence. |
| January 23, 1997 | The Chase USA judgment against LaBorde is docketed. |
| June 9, 1997 | The Chase judgment against LaBorde is docketed. |
| September, 1997 | The FCC judgment against LaBorde is docketed. |
| November 4, 1998 | The quitclaim deed from LaBorde to the Debtor recorded. |

---

4. The appraisal was prepared by Kenneth J. Villone, the same appraiser who estimated the fair market value of the Residence at $84,000 on October 16, 1997 in connection with the Debtor's abandonment motion.

5. The Debtor has raised the very issues discussed by Justices Kennedy and Souter in their concurrence in *Sanderfoot*.

## DISCUSSION

### A. Section 522(f)(1) and Federal Case Law

Section 522(f)(1) provides, to the extent pertinent here, that:

> The debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under Subsection (b) of this Section, as such lien is—
>
> (B) a judicial lien ...

11 U.S.C. § 522(f)(1) (1999).

▪▪▪ We know from *Sanderfoot* that: (1) "... unless the debtor had the property interest to which the lien attached at some point before the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1)." *Sanderfoot* at 296, 111 S.Ct. 1825; (2) "the critical inquiry remains whether the debtor ever possessed the interest to which the lien fixed, before it affixed" *Sanderfoot* at 299, 111 S.Ct. 1825; and (3) "whether the debtor ever possessed an interest to which the lien fixed, before it fixed, is a question of state law" *Id.*

### B. New York Law

Section 5203 of the New York Civil Practice Law and Rules (the "CPLR"), provides that a judgment, when docketed with the clerk of the county in which real property is located, becomes a lien on any interest of the judgment debtor in that real property for a period of ten years.[6]

▪▪▪ We know from the Decision of the New York Court of Appeals in *V.R.W, Inc. v. Klein*, 68 N.Y.2d 560, 510 N.Y.S.2d 848, 503 N.E.2d 496 (N.Y.1986) (*"Klein"*) that under New York Law: (1) a tenancy by the entirety has always been a form of real property ownership available only to those who were actually married at the time of the conveyance; (2) the specific rights arising from this unique form of co-ownership are the logical corollary of the legal fiction that husband and wife were but one person; (3) when there is a tenancy by the entirety both spouses have an equal right to possession of the property as well as any profits yielded by the property; (4) a tenancy by the entirety is further distinguished by the fact that it confers on a surviving spouse the right to absolute ownership of the property upon the death of the other spouse; (5) as long as the marriage remains legally intact, tenants by the entirety continue to be seized of the whole, and the death of one merely results in a defeasance of the deceased spouse's co-extensive interest in the property; (6) divorce transforms a tenancy by the entirety into a simple tenancy in common, with no right of survivorship existing in either party; (7) each tenant by the entirety may sell, mortgage or otherwise encumber his or her rights in the property, subject to the continuing survivorship rights of the other, and the rights of a grantee or mortgagee in the property are essentially the same as those possessed by the grantor or mortgagor: a right to shared possession and ownership subject to the original co-tenant's reciprocal rights of survivorship; and (8) the rights of a mortgagee who has acquired the interest of only one of the parties to a tenancy by the entirety may be altered upon the occurrence of a divorce decree or judgment of annulment issued after the mortgage was executed; the rights of the mortgagee follow those of its mortgagor.

▪▪▪ Like the New York Court of Appeals in Klein, other New York courts have recognized that: (1) even when property is held by a husband and wife as tenants by the entirety, each spouse has a separate recognizable interest in the property, and that a judgment against only one spouse, when docketed, can become a judgment lien on that separate interest in the real property held as a tenant by the entirety. *See Finne-*

---

6. Section 5203. Priorities and liens upon real property, provides that:

(a) Priority and lien on docketing judgment. No transfer of an interest of the judgment debtor in real property, against which property a money judgment may be enforced, is effective against the judgment creditor either from the time of the docketing of the judg-

ment with the clerk of the county in which the property is located until ten years after the filing of the judgment-roll, or from the time of the filing with such clerk of a notice of levy pursuant to an execution until the execution is returned ...

CPLR Section 5203 (1999).

*gan v. Humes,* 163 Misc. 840, 853, 298 N.Y.S. 50 (N.Y.1937) (the judgment recovered in the instant case became a lien upon the husband's interest in the estate); (2) a conveyance by a judgment debtor spouse of their interest as a tenant by the entirety to the other spouse, or a third party, does not affect the lien of a judgment creditor on the interest of the conveying judgment debtor. *See Greenhouse Realty, Inc. v. St. George,* 151 A.D.2d 7, 9, 546 N.Y.S.2d 483 (1989) (*"Greenhouse"*) (the conveyance from husband to wife did not affect the preexisting judgment lien against the husband's interest on the property); and (3) when a decree of divorce is entered and a tenancy by the entirety is transformed into a tenancy in common, the lien of a judgment creditor on the tenancy by the entirety interest of a judgment debtor spouse becomes a judgment lien on the one-half tenancy in common interest in the property now possessed by the divorced judgment debtor. *See Greenhouse* at 10, 546 N.Y.S.2d 483 ("thus, in our view, plaintiff is entitled to a declaration that a tenancy in common was created with respect to the Saratoga property as a result of defendant's divorce from Ashplant and that plaintiff has a judgment lien on a one-half interest in the property.")

C. *Overview*

 Under New York Law, when the Citibank judgment against LaBorde was docketed in the Ontario County Clerk's Office on February 1, 1996, it became a Judgment Lien on LaBorde's tenancy by the entirety interest in the Residence. When the Divorce Decree was entered on January 2, 1997, the Citibank Judgment Lien became a Judgment Lien on LaBorde's one-half tenancy in common interest in the Residence, but did not attach to the Debtor's tenancy in common interest. When, after the Divorce Decree was entered but before LaBorde conveyed his interest in the Residence to the Debtor, the Chase USA, Chase and FCC judgments were docketed, they also became Judgment Liens on LaBorde's one-half tenancy in common interest in the Residence.

When the Debtor acquired LaBorde's one-half tenancy in common interest by quitclaim deed on or about November 4, 1998, she acquired his interest subject to the Judgment Liens which had affixed to LaBorde's interest in the Residence, first as a tenant by the entirety and then as a tenant in common, because they attached before the Debtor acquired the interests. As a result, the Debtor cannot avoid, by the use of Section 522(f)(1), the Judgment Liens on the one-half tenancy in common interest which she acquired from LaBorde. She is, however, able to utilize Section 522(f)(1) to confirm that the Judgment Liens were never liens on her interest in the Residence, initially as a tenant by the entirety when the Citibank Judgment was docketed and then after the Divorce Decree was entered, as a one-half tenant in common.

### *CONCLUSION*

The Judgment Liens are avoided under Section 522(f)(1) on a one-half interest in the Residence.[7]

**IT IS SO ORDERED.**

---

**7.** The Debtor has filed papers with the Court for it to determine the allowed secured claims of the judgment creditors under Section 506, so that these claims can be paid in full in her Chapter 13 plan, as required by Section 1325.