## In re Kathleen M. HUTCHINS, Debtor.

### No. 03–10730.

United States Bankruptcy Court.
D. Vermont.

Feb. 18, 2004.

Gleb Glinka, Esq., Cabot, VT, Movant–Trustee, Pro Se.

Nancy J. Creswell, Esq., Office of the U.S. Attorney, Burlington, VT, for the Creditor.

## *MEMORANDUM OF DECISION DENYING IN PART, AND GRANTING IN PART, THE TRUSTEE'S MOTION TO AVOID TWO FEDERAL LIENS*

COLLEEN A. BROWN, Bankruptcy Judge.

Trustee Gleb Glinka has moved under 11 U.S.C. §§ 544(a) and 724(a)[1] to avoid two liens filed by the United States against Debtor Kathleen M. Hutchins' homestead property. The two liens secure federal criminal fines owed by the Debtor's former husband, Stephen B. Hutchins. On October 30, 2003, the parties presented oral argument about whether the first Notice of Lien ("the First Lien") could attach to a property interest held in a tenancy by the entirety; how the Debtor's subsequent divorce from Mr. Hutchins, which granted the entire property to her "free of any interest or claim," affected the First Lien and his property interest under Vermont law; whether the United States' filing of its second Notice of Lien ("the Second Lien"), between the date of the divorce and the date the Debtor recorded a certified copy of the Divorce Decree with the Colchester Town Clerk, constituted a valid Second Lien; and the extent of the bankruptcy estate's interest in this property.

After considering the Parties' papers, the evidence presented, and relevant federal and state law, the Court finds that the Trustee may not avoid either the First or Second Lien to the extent they encumber the property interest formerly held by Mr. Hutchins. The Court also finds that the Trustee is entitled to declaratory judgment that the Debtor has, at all relevant times, held an interest in the property which is distinct from Mr. Hutchins' interest, that the liens do not encumber the Debtor's interest, and therefore, that the estate's interest includes two distinct components, only one of which is encumbered by the United States' two liens.

This Court has jurisdiction in this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(K).

### I. BACKGROUND

On September 10, 1976, the Debtor and her husband, Stephen B. Hutchins, took title to real property located at 98 Clay Point Road, in Colchester, Vermont ("the Property") as tenants by the entirety. On January 19, 1999, the United States District Court for the District of Vermont

---

**1.** All references to statutes are to Title 11 of the United States Code ("the Bankruptcy Code"), unless otherwise indicated.

convicted Mr. Hutchins on seven counts related to drug trafficking, sentenced him to 276 months imprisonment, and fined him $500,000. On February 3, 1999, the United States executed the first Notice of Lien, pursuant to the Anti–Terrorism and Effective Death Penalty Act of 1996, 18 U.S.C. §§ 3613(c), (d). Two days later, the Colchester Town Clerk's Office recorded the First Lien against the Property.

Meanwhile, the Debtor filed for a divorce from her husband. On December 19, 2001, a Vermont family court issued a Default Final Order and Decree of Divorce ("the Divorce Decree") and awarded the Property to the Debtor "free of any interest or claim" from Mr. Hutchins.

On March 17, 2003, the United States District Court convicted Mr. Hutchins on four additional counts related to drug trafficking, sentenced him to 188 months imprisonment, and imposed a fine totaling $500,400. The United States executed the second Notice of Lien, pursuant to 18 U.S.C. §§ 3613(c), (d), on March 31, 2003; it recorded the Second Lien against the Property on April 4, 2003.

Subsequently, pursuant to 15 V.S.A. § 754, the Debtor recorded a certified copy of the Divorce Decree and a property transfer tax return, effective April 30, 2003.

On May 12, 2003, the Debtor filed for protection under Chapter 7 of the Bankruptcy Code and, on August 15, 2003, this Court entered an order granting the Debtor a discharge.

## II. DISCUSSION

The Trustee initially moved to avoid the First and Second Liens pursuant to §§ 544(a) and 724(a). The United States objected and argued that the subject liens may attach to an interest in a tenancy by the entirety as a matter of federal law and are absolutely exempt from avoidance by bankruptcy trustees. Based on the language of the federal statute,[2] the Trustee conceded he could not avoid the First and Second Liens under § 544, but maintained that, under the facts of this case, the United States could not enforce its liens against the Debtor's—now the estate's—interest in the Property.

The Trustee's revised argument focused on: (i) whether the First Lien could attach to an entireties interest at all; (ii) if the First Lien were validly perfected, whether the divorce extinguished Mr. Hutchins' interest, thus invalidating the First Lien and leaving no value to which the Second Lien could attach; (iii) whether the entry of the Divorce Decree per se constituted an extinguishment of Mr. Hutchins' entireties interest and a conveyance of the Property to the Debtor; (iv) whether this Court should adopt the "innocent spouse" theory to protect the Debtor's interest in the Property as of the date of the recording of the Divorce Decree; and (v) whether the Court would issue a declaratory judgment determining the secured status of the United States' Liens, and the extent and value of the Debtor's interest in the Property, as of the date of the filing of the instant bankruptcy case.

The United States countered by arguing that: (i) federal law authorizes federal liens to attach to entireties property; (ii) the Divorce Decree neither extinguished Mr. Hutchins' interest in the Property nor transferred the entire fee in the Property to the Debtor, and, in any event, that a federal lien attaches to the actual property, not merely to the criminal party's inter-

**2.** Section 3613(e) provides that liens for criminal fines "shall not be voided in a bankruptcy proceeding." 18 U.S.C. § 3613(e) (2000).

est in that property; (iii) the Debtor had to record either a quitclaim deed or a certified copy of the Divorce Decree to effectuate the transfer directed by the Divorce Decree; (iv) the innocent spouse theory is applicable only to the enforcement of a lien and has no bearing on the question of whether the lien attaches to a particular property interest; and (v) it is premature to address the valuation issue. The United States further asserted that the Trustee's position that one can extinguish a lien arising from a federal criminal fine simply by obtaining a divorce was nonsensical and contrary to both public policy and the congressional intent manifest in 18 U.S.C. § 3613. The United States did not oppose the Trustee's request for a declaratory judgment as to the Parties' respective interests in the Property.

## A. The Recording and Attachment of the First Lien

### (1) Can a Lien Attach to Property Held in a Tenancy by the Entireties?

 Tenancy by the entirety is a particularly venerable form of ownership that dates back to the legal fiction that marriage creates one individual. A tenancy by the entirety is comprised of the four "unities" required in any joint tenancy: time, title, interest, and possession, along with a fifth unity: that of marriage. *See* Patrick J. Concannon, Note, *Bankruptcy and the Tenancy by the Entirety Property: Its Treatment under the Code and in the Courts*, 58 UMKC L. REV. 501, 503 (1990) (citing 2 AMERICAN LAW OF PROPERTY § 6.6(c)). Likewise, in Vermont, "a con-

veyance to them by name was a conveyance in law to but one person." *Stewart v. Bleau's Estate*, 102 Vt. 273, 276, 147 A. 692 (1929). Because these "two real individuals" were a sort of "legal fiction" and held "no estate which was discernable or devisable," each held the estate "seized of the whole." *Id.* Furthermore, state law dictates that "[a] person shall not convey an interest in a tenancy by the entirety or in homestead property to any person except his spouse, unless the spouse joins in the conveyance." 27 V.S.A. § 349(a)(3) (2000). Moreover, a creditor of only one spouse may not attach a lien to a tenancy by the entirety; a lien may only attach if it is a joint debt. *See Cooper v. Cooper*, 173 Vt. 1, 20, 783 A.2d 430 (2001); *In re Cerreta*, 116 B.R. 402, 403 (Bankr.D.Vt.1990). "Vermont law makes clear that the undivided interest of one tenant by the entirety may not be reached by the sole creditors of that tenant." *Id.* at 405. Vermont recognizes "tenancy by the entirety as an indivisible interest between spouses regardless of the circumstances." *Id.* at 405 n. 4. Thus, Vermont is one of the "full bar" states that, as a settled matter of law, prohibit *any* unilateral lien from attaching to *any* entireties property or interest. *See* Steven R. Johnson, *After Drye: The Likely Attachment of the Federal Tax Lien to Tenancy–by–the–Entireties Interests*, 75 IND. L.J. 1163, 1169 (2000). This Court has been a clear and consistent voice in the chorus of federal courts that sing the praises of protecting tenancy by the entirety interests under state law.[3]

---

**3.** Historically, this Court has emphasized the primacy of state law in determining property law issues. "State law defines the nature and extent of a debtor's property and therefore the bankruptcy estate's interest in the property." *In re Davis*, 109 B.R. 633, 637 (Bankr.D.Vt. 1989). Furthermore, this Court has typically looked only to Vermont law when considering the extent or validity of liens. "It is universally held that the validity, nature and effect of liens are governed by the law of the state." *In re STN Enterprises, Inc.*, 45 B.R. 959, 962 (Bankr.D.Vt.1985). The instant decision does not change that general principle; rather, it acknowledges that the nature of the lien here

However, in recent years the archaic concept of tenancy by the entirety has come into frequent conflict with the United States' interest in collecting back taxes or criminal fines as well as "the modern understanding of tax liens." *Id.* at 1163. The Supreme Court has specifically directed the federal courts to give less deference to state courts' protections for tenancies by the entirety when federal debts are at issue. "There is no doubt ... that not only do *both* spouses (rather than neither) have an independent interest in the homestead property, but that a federal tax lien can at least *attach* to each of those interests." *United States v. Rodgers,* 461 U.S. 677, 703 n. 31, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). The Supreme Court made clear that the authority for determining whether a property interest existed encompassed not only state law definitions of property interests, but also "the breadth of the control the [taxpayer] could exercise over the property," as defined by federal law. *Drye v. United States,* 528 U.S. 49, 61, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999). The high court also held that since federal tax liens were a matter of federal law, it would look beyond the state law theory of entireties to determine what property interests exist and if they may be attached. *Id.* at 57–59, 120 S.Ct. 474.

The Supreme Court recently addressed directly the question of whether a federal tax lien against one co-tenant may attach to an entireties estate when Sandra L. Craft sought to quiet title to her homestead against a federal lien filed to secure taxes owed by her husband. *See United States v. Craft,* 535 U.S. 274, 276–77, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002). Mr. Craft held the property, which was encumbered by a tax lien, with Ms. Craft as tenants by the entirety under Michigan law. He subsequently transferred the

is of a type that Congress has distinguished

property to Ms. Craft by quitclaim deed, and she brought action to quiet title. *Id.* at 277, 122 S.Ct. 1414. After the district court granted summary judgment to the government, the Sixth Circuit reversed, holding that, under state law, "the husband had no separate interest in property held as a tenant by the entirety" to which a lien may attach. *Id.*

The Supreme Court reversed, holding that the government's need to collect taxes must trump the protection of entireties interests, and consequently, that federal tax liens may attach to property interests held in a tenancy by the entirety. *Id.* at 288, 122 S.Ct. 1414. Justice O'Connor pointed out that, notwithstanding the rather amorphous attributes of a tenancy by the entirety, there certainly is an attachable interest there:

> Respondent had no more interest in the property than her husband; if neither of them had a property interest in the entireties property, who did? This result not only seems absurd, but would also allow spouses to shield their property from federal taxation ... [by] facilitating abuse of the federal tax system.

*Id.* at 285, 122 S.Ct. 1414. While federal courts had historically deferred to the special status of tenancies by the entirety under state law, the high court made clear that going forward federal courts should rely on federal law when construing the extent of liens created under federal law:

> We recognize that Michigan makes a different choice with respect to state law creditors.... But that by no means dictates our choice. The interpretation of 26 U.S.C. § 6321 is a federal question, and in answering that question we are in no way bound by state courts' answers to similar questions involving state law.

for special treatment.

*Id.* at 288, 122 S.Ct. 1414. Although *Craft* dealt only with tax liens, Congress has unequivocally stated that criminal fines are to be treated in the same fashion as federal tax liabilities. *See* 18 U.S.C. § 3613(c).

■■■ Thus, pursuant to *Craft,* this Court concludes it must apply federal law to determine whether the First Lien attached to the Property that Mr. and Ms. Hutchins held as tenants by the entirety; that under the unambiguous language of 18 U.S.C. § 3613, criminal penalty liens are to be treated as tax liens; that, based upon the evidence presented, the United States properly perfected the First Lien; and, hence, the First Lien was a valid encumbrance on the Property, upon recording, notwithstanding that the Property was held as a tenancy by the entireties.

### (2) Can a Lien Recorded Against One Tenant by the Entirety Attach to the Property Interest of the Other?

■■■ *Craft* enunciates the principle that under federal law each tenant has "individual rights" in the tenancy and, therefore, that Mr. Craft held a "separate interest in the entireties property to which the federal tax lien attached." *Craft,* 535 U.S. at 276, 278, 122 S.Ct. 1414. A federal tax lien attaches to a tenancy by the entirety because, though the parties may hold coincident, inchoate, and indivisible interests under state law, they nonetheless hold separate, identifiable interests as a matter of federal law. *Id.* at 276, 281–82, 122 S.Ct. 1414. Thus, *Craft* requires a determination here that under federal law both Mr. and Ms. Hutchins had individual rights in the Property during their marriage and that Mr. Hutchins held a separate interest in the entireties property to which the federal lien could attach. The necessary corollary to this determination is that the Debtor also held a distinct, if inchoate, interest in the tenancy by the

entirety. The Supreme Court was very clear on this point: "[T]here is no doubt ... *both* spouses (rather than neither) have an independent interest in the homestead property ..." *Id.* at 284, 122 S.Ct. 1414 (quoting *Rodgers,* 461 U.S. at 703 n. 31, 103 S.Ct. 2132); *see also In re Basher,* 291 B.R. 357 (Bankr.E.D.Pa.2003).

Hence, in light of *Craft's* clear statement that each tenant has a distinct estate in a tenancy by the entireties property, and that the First Lien was the financial obligation solely of Mr. Hutchins, this Court finds that as of the date of its recording, the First Lien did attach to Mr. Hutchins' entireties interest in the Property, but did not encumber Mrs. Hutchins entireties interest at all.

### B. The Entry of the Divorce Decree

The Trustee argues that the family court's entry of the Debtor's Divorce Decree extinguished Mr. Hutchins' entireties interest in the Property, thus annulling the First Lien and leaving nothing to which the Second Lien could attach. The United States counters that the divorce cannot extinguish its validly recorded First Lien on the entire fee, nor deprive it from attaching a second, post-divorce lien to Mr Hutchins' co-tenant interest in the Property. Each party is half right.

■■■ The arguments presented beg the question of how a state law judgment (granted in a divorce) fares against a federal law lien (recorded to enforce federal criminal fines). We begin by examining the state law context for the question. A divorce renders a tenancy by the entirety into a tenancy in common because it breaks the unity of husband and wife. *See Stewart,* 102 Vt. at 276, 147 A. 692; *Preston v. Chabot,* 138 Vt. 170, 175, 412 A.2d 930 (1980). The Vermont Supreme Court has held that each tenant in common has a separate property interest that is not encumbered by the separate debts of a co-

tenant. "[T]he admissions of one tenant in common of realty are not receivable against his co-tenant, because their interest is not identical, but is a mere community of interest." *Blondin v. Brooks*, 83 Vt. 472, 481–82, 76 A. 184 (1910). "We have no quarrel with the rationale in *Blondin* that tenants in common hold by unity of possession, each having separate and distinct title and freehold, and each being solely and separately seised of his share." *Northeast Petroleum Corp. of New Hampshire v. State Agency of Transp.*, 143 Vt. 339, 342, 466 A.2d 1164 (1983). Therefore, one tenant in common is not responsible for any liens on the interests held by other tenants.

■ Turning next to federal law, we note that this Court has held that a divorce proceeding under "Vermont law sweeps every asset … into a marital estate, and then redistributes the property of that estate to the divorced parties." *In re Farrar*, 219 B.R. 48, 52 (Bankr.D.Vt.1998) (Conrad, J.). A divorce estate contains all the parties' property, no matter how the parties acquired them, with the caveat that actual title is immaterial. *Id.* at 53 (citing 15 V.S.A. § 751(a)). "The nature of the process interrupts the chain of title." *Id.* at 52. Upon entering the divorce decree, the family court "extinguished the marital interest each party had in the marital estate, and redistributed the property, creating new interests in place of the old." *Id.* at 54. This is not to say, however, that a family court's divorce decree reorders the parties' affairs and creates or extinguishes property interests held by third parties effective immediately, as the Trustee contends, in reliance upon *Condosta v. Condosta*, 142 Vt. 117, 453 A.2d 1128 (1982). In *Condosta* the Vermont Supreme Court instructed only that while a divorce terminates a *homestead right* immediately, as well as a tenancy by the entirety, it does not instantly convey all the non-homestead property interests. *See id.* at 123, 453 A.2d 1128. Although this Court recognized in *Farrar* that a divorce decree distributes the marital properties in accordance with specified terms, it held that the divorce decree is not a conveyance instrument *per se* upon entry. *See* 15 V.S.A. § 754.

■ Upon their divorce, the Debtor and Mr. Hutchins took the Property from the divorce estate as tenants in common. Whereas during their marriage they each held an undivided inchoate interest in the whole and the First Lien encumbered the husband's interest, after the divorce they each held a distinct, divided one-half interest. The Debtor's undivided, unencumbered interest in the whole was transformed into a divided, but still unencumbered one-half interest. Similarly, Mr. Hutchins' undivided, encumbered interest in the whole was transformed into a divided, but still encumbered interest in one-half of the Property. *See Stewart*, 102 Vt. at 276, 147 A. 692; *Blondin*, 83 Vt. at 481–82, 76 A. 184. The Divorce Decree did not extinguish or diminish the First Lien; it merely gave definition to the extent of Mr. Hutchins' interest. The Government's security evolved from being a lien on an inchoate interest in the whole to being a lien on a choate interest in one-half of the Property. In sum, the federal lien on Mr. Hutchins' interest remained intact and became defined.

Thus, this Court finds that upon entry of the Divorce Decree, Mr. and Ms. Hutchins' interests in the Property morphed from two coincident interests in the whole to two distinct interests in a half, where the First Lien remained attached to Mr. Hutchins' interest in the Property, and the Debtor became seized of a one-half interest still unencumbered by the First Lien.

## C. The Recording and Attachment of the Second Lien

■ The Trustee argues that post-divorce Mr. Hutchins had no interest in the Property to which the Second Lien could attach, and hence, the recording of the Second Lien had no legal effect. The United States counters that until the Debtor recorded a certified copy of the Divorce Decree, Mr. Hutchins held an interest in the Property and the Property was indeed vulnerable to the Second Lien. The United States is correct.

The Divorce Decree destroyed the unity of marriage, but did not vest title in either tenant. After entry of the Divorce Decree, but while the Debtor and Mr. Hutchins still held the Property as tenants in common, the United States gave proper notice of the Second Lien, which the Colchester Town Clerk duly recorded. There has been no evidence presented that the recording of the Second Lien was defective or ineffective. Since it is clear under Vermont law that the interests of one tenant in common are not attachable by the creditors of another tenant in common, *see Blondin*, 83 Vt. at 481–82, 76 A. 184, this Court concludes that the Second Lien did attach to Mr. Hutchins' one-half interest as a tenant in common, but did not attach to the Debtor's one-half interest.

## D. The Recording of the Divorce Decree

### (1) What Interest did Mr. Hutchins Hold After the Divorce Decree was Recorded?

■ The Trustee argues that when the Debtor recorded the Divorce Decree as a quitclaim deed, she triggered the "survivorship" event of the tenancy by the entirety, and thus extinguished Mr. Hutchins' interest in the Property in the same way as would his death. According to this theory, the Debtor received a fee simple interest, free of the liens against Mr.

Hutchins, upon the recording of the certified copy of the Divorce Decree. However, the Trustee's logic is flawed in two key respects. First, as discussed previously, a divorce converts a tenancy by the entirety into a tenancy in common; it does not result in either spouse being seized of the entire estate. *See Stewart*, 102 Vt. at 276, 147 A. 692; *In re Farrar*, 219 B.R. at 54. Second, when the divorce extinguished the entireties estate it also terminated both spouses' right of survivorship; there are no survivorship rights in the spouses' resulting tenancy in common. *See Cooper*, 173 Vt. at 6, 783 A.2d 430.

■ The Trustee argues, alternatively, that the extinguishing of the entireties estate and the conveyance of the entire fee interest to the Debtor were simultaneous events. Vermont law does not support this theory. The tenancy by the entirety was extinguished and replaced by a tenancy in common on December 19, 2001, when the Divorce Decree was entered. *See Stewart*, 102 Vt. at 276, 147 A. 692. By contrast, it was not until April 30, 2003, when the Debtor recorded the Divorce Decree that the tenancy in common was transformed into a fee simple interest. *See* 15 V.S.A. § 754.

Thus, this Court finds that Mr. Hutchins was a tenant in common from the date the Divorce Decree was entered by the family court to the date the Divorce Decree was recorded in the Colchester Land Records; likewise, his interest in the Property was extinguished upon the recording of the Divorce Decree.

### (2) What Interest did the Debtor Hold After the Recording of the Divorce Decree?

The United States' argument that its two Liens encumber the entire Property requires the Court to address squarely the

conflict between the Government's right to secure and collect its criminal fine from this Property, and the Debtor's right to enjoy her interest in the Property as part of the "fresh start" that she believes she has been promised by the Divorce Decree and her discharge order entered in this case. Have the divorce and bankruptcy relieved the Property of the claims the Government filed against Mr. Hutchins? In order to resolve this conflict between the Debtor's and the United States' interests in the Property, the Court must determine the applicability of two cornerstones of real property law: the merger of estates in property and equitable versus legal interests in property.

We examine, at the outset, if and how the traditional theory of merger would operate under these facts, focusing on the critical distinction between the Debtor's equitable interest in the Property and her legal interest in the Property. In *Craft*, the Supreme Court specifically held that the guilty "husband's interest in the entireties property" was attachable, *Craft*, 535 U.S. at 288, 122 S.Ct. 1414, but it did not conclude that the wife's interests were also subject to that lien. In fact, the high court did not even address the issue of merger. Hence, we turn to state law.

Under Vermont law, it is well settled that where a single purchaser acquires all of the legal and equitable interests in a fee, these two interests merge into a fee simple. "Where the legal and equitable estate in the same land become vested in the same person, the equitable will merge in the legal estate; for a man cannot be a trustee for himself, nor hold the fee, which embraces the whole estate, and the same time hold the several parts separate from the whole." *Noyes v. Noyes*, 110 Vt. 511, 520–21, 9 A.2d 123 (1939) (quoting PERRY ON TRUSTS § 347 (7th ed.)). However, there are several well-established principles, under both state and federal law, that allow a court to decline to apply merger in certain circumstances.

First, it is well settled that a bankruptcy court acts well within its powers when it acts to protect the equitable interests of debtors and creditors alike as a matter of federal law. The United States Supreme Court emphasized this point in stating that "this Court has held that for many purposes 'courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity.'" *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281 (1939) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). A bankruptcy court "applies the principles and rules of equity jurisprudence." *Id.*

Second, it is equally well established under both this Court's jurisprudence and Vermont law that equitable interests in a homestead should be protected. This Court has noted, "As a general rule, the claim of homestead is sustainable in respect of the premises held by the claimant as *equitable* owner." *In re Soter*, 26 B.R. 838, 841 (Bankr.D.Vt. 1983) (emphasis added). In *Soter*, a creditor claimed that a debtor may "acquire a homestead only in Property to which he holds legal title," but Judge Marro held that "[s]uch a limitation is not tenable." *Id.* The Court based its conclusion on Vermont's longstanding position that the *"essential condition of this right and interest is ownership and occupancy."* *Id.* (citing *Morgan v. Stearns*, 41 Vt. 398, 407 (1868)) (emphasis is original). It is important to note that these essential conditions of an equitable interest—ownership and occupancy—were also relied upon by Justice O'Connor to identify discrete interests in a tenancy by the entirety to

which a federal lien may attach. *See Craft*, 535 U.S. at 282, 122 S.Ct. 1414. The Debtor's occupancy interest must be treated as equitable in nature and protected as a homestead.

Third, the presence of liens on the former co-tenant's interest provides good cause to except this case from the general rule of merger since the liens were imposed by a third party. Merger does not take place "if there be in a third person, a right of dower, a right acquired by purchase, or a *real lien by attachment*, intervening between the mortgage and the equity." *Hunt v. Hunt*, 14 Pick 374, 385, 31 Mass. 374 (1883) (emphasis added).

> To effect a merger at law, the right previously existing in an individual, and the right subsequently acquired, in order to coalesce and merge, must be precisely co-extensive, must be . . . held in the same right and *there must be no right outstanding in a third person*, to intervene between the right held and the right acquired. If any of these requisites are wanting, the two rights do not merge, but *both may well stand together*.

*Gardiner v. Washington Loan & Trust Co.*, 62 F.2d 869, 871 (D.C.Cir.1932) (quoting *Hunt*, 31 Mass. 374, 14 Pick. at 384–85) (emphasis added). Thus, the imposition of the United States' lien on Mr. Hutchins' estate provides a basis for refusing to allow the lien to encumber the Debtor's interest through merger. Instead, both the United States' liens and the Debtor's unencumbered interest co-exist and remain distinct in the fee simple estate.

Fourth, a court may decline to apply merger where it finds grounds in equity for doing so. "When the owner of the fee simultaneously holds legal and equitable titles, it does not necessarily result in a merger of the equitable into the legal title." 28 Am. Jur. 2D *Estates* § 429 n. 2

(2003) (citing *Long Island Lighting Co. v. Comm'r of Taxation and Fin.*, 235 A.D.2d 637, 652 N.Y.S.2d 640 (3d Dep't 1997)). "[T]he lesser estate will merge into the greater estate *unless a reason exists for keeping them separate*." *In re TML, Inc.*, 291 B.R. 400, 429 (Bankr.W.D.Mich.2003) (emphasis added). Merger "is intended to serve primarily as a title clearing device." *Id.* at 429 n. 64. Merger is not always a substantive doctrine; instead, it often operates only to simplify the administration and recording of property titles. "Before the modern recording system, the doctrine of merger was frequently invoked to 'serve the non-substantive purpose of simplifying property titles.'" *Id.* at 429 (quoting RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 8.5 cmt. c (1997)). A court may choose not to apply merger where more substantive policy, equitable, or legal considerations compel a different approach.

Another important consideration is the manifest intention of the parties, particularly where merger will injure the interests of the owner. The Vermont Supreme Court has stated "no case can be found, in which the law will declare the union of two estates in the same person a merger to his prejudice." *Myers v. Brownell*, 1 D. Chip. 448, 454 (Vt.1824). "The law presumes that the holder of both the legal and equitable estates intends to keep them separate when it is clearly in the holder's interest to do so." 28 Am. Jur. 2D *ESTATES* § 429 n. 2 (citing *Estate of Frantz v. Page*, 426 N.W.2d 894, 899 (Minn.Ct.App.1988)). A court may decline to apply merger where it finds non-merger would serve the owner's best interests, even though the owner is unaware of the doctrine of merger.

A court may also choose to bar extinguishment of an equitable interest through merger where it operates to cre-

ate an injustice. "It would seem on the whole that the question whether the equitable interest is merged in the legal title, upon their coming together, should be settled in each case with reference to the particular circumstances thereof, merger being ordinarily regarded as taking place unless the resulting extinguishment of the *equitable interest* would operate to cause injustice." 1 TIFFANY REAL PROP. § 286 (2003) (emphasis added). "If the legal and equitable estates should be in the same person, it will not necessarily be held to be a merger if justice and the manifest intention of the testator require that the two estates should be kept separate." *Tifft v. Ireland*, 273 Mass. 56, 60, 172 N.E. 865 (1930). It would clearly be contrary to Ms. Hutchins' best interest, and inequitable, to have her entire fee encumbered as a result of a merger of her unencumbered interest with Mr. Hutchins' encumbered interest.

 Fifth, a court may take into account the subject party's possessory interest in the fee when determining whether it would be just to allow full merger of the two interests in property. *See, e.g., In re Soter*, 26 B.R. at 841. "[A] difference in the character of the legal and equitable interests may justify the refusal to apply merger." *Noyes*, 110 Vt. at 521, 9 A.2d 123. This Court finds that the Debtor held an interest in the Property at all relevant times: she lived in the homestead during the marriage, resided there at the time of the divorce, remained there subsequent to the divorce, and lives there today. The fact that her interest was inchoate during the marriage, at the time the First Lien attached, does not in any way diminish her right to retain her interest free of the First Lien. It is also clear that the Debtor's interest in the Property was entirely distinct from Mr. Hutchins' interest at the time the Second Lien attached.

Moreover, although the question of how liens imposed under 18 U.S.C. § 3613 should be treated in a bankruptcy case appears to be a matter of first impression, this Court finds instructive *In re LaBorde*, 231 B.R. 162 (Bankr.W.D.N.Y.1999), because it involves a nearly identical set of real estate transactions.[4] There, the debtor sought to avoid two perfected judgment liens against her ex-husband. The first judgment lien attached to her husband's interest in the property, which they held as tenants by the entirety. *Id.* at 165. The second judgment lien attached later, after their divorce, when they held their property as tenants in common. *Id.* The debtor there, like the Debtor here, recorded a quitclaim deed *after* the liens were recorded. *Id.* The bankruptcy court held that, as a result of the divorce, the lien against the entireties estate did not attach to the debtor's interest, and that the liens subsequent to the divorce attached only to the husband's one-half tenancy in common interest. *Id.* at 167. The court ruled that the debtor could not avoid the liens on her ex-husband's interest because they were attached prior to her acquisition of the full fee interest. *Id.* However, the bankruptcy court confirmed that the liens "were never liens on her interest" and thus avoided the liens on the debtor's one-half interest. *Id.*

For all of these reasons, the Court finds that when the Debtor recorded the Divorce Decree, she unified legal title in the Property from the two tenancies in common into a single fee simple and extinguished Mr. Hutchins' interest in the Property, but her distinct, equitable interest remained intact and unencumbered,

---

**4.** The only differences are that the liens were not federal liens, and that the debtor filed her motion under § 522(f).

separate from the interest formerly held by Mr. Hutchins and that is encumbered by the First and Second Liens.

### E. The Debtor's Interest at the Time of the Bankruptcy Filing

It is a fundamental tenet of bankruptcy law that the "bankruptcy estate" is comprised of whatever interests, legal and equitable, that a debtor has on the date of the filing of his or her bankruptcy case. *See* § 541(a). Hence, in order to determine the Trustee's interest in the Property, the Court must ascertain what interest the Debtor had in the Property on the date of the bankruptcy filing. For the reasons stated above, this Court finds that the Debtor held the Property in fee simple at the time of the bankruptcy filing. This Court further finds that the First and Second Liens encumbered this interest only to the extent of the interest previously held by Mr. Hutchins—up to one half of the value of the Property on April 30, 2003—when the Debtor recorded the Divorce Decree and became seized of a fee simple interest.

### III. CONCLUSION

This Court finds that the First and Second Liens are valid encumbrances on the Property to the extent of the interest previously held by Mr. Hutchins. The Court further finds that the Debtor's equitable interest in the Property never merged with Mr. Hutchins' one-half tenancy interest and was never encumbered by the Liens. At the time the Property was held in a tenancy by the entirety, Mr. Hutchins' interest was inchoate, but the First Lien attached to whatever his interest ultimately turned out to be. When the tenancy by the entirety was transformed by the divorce into a tenancy in common ownership, the First Lien was fixed on Mr. Hutchins' choate, one-half tenancy in the Property. When the Second Lien was filed, it also encumbered Mr. Hutchins' one-half interest in the Property. At no time did either Lien encumber the Debtor's interest in the Property.

Therefore, the Trustee's motion to avoid the First and Second Liens on the Property formerly owned by the Debtor's ex-husband is DENIED, and the Trustee's motion to avoid the First and Second Liens on the half of the Property continuously owned by the Debtor is GRANTED. The Court declares that the Trustee's interest in the Property on the date of the bankruptcy filing is identical to that of the Debtor, less any exemptions which the Debtor has properly claimed.

This decision intentionally leaves open the valuation of the Debtor's interest as of the date of the bankruptcy filing, subject to the Parties' rights to file additional papers that would bring this question properly before the Court.

This Memorandum constitutes the Court's findings of fact and conclusions of law.